IMMIGRATION AND NATURALIZATION SERVICE *v.*
JONG HA WANG ET UX.

No. 80–485.   Decided March 2, 1981

PER CURIAM.

Section 244 of the Immigration and Nationality Act (Act),
66 Stat. 214, as amended, 8 U. S. C. § 1254 (a)(1), pro-
vides that the Attorney General in his discretion may suspend

deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." [1]  The Attorney General is authorized to delegate his powers under the Act, 8 U. S. C. § 1103, and his authority under § 244 has been delegated by regulation to specified authorities in the Immigration and Naturalization Service.  8 CFR § 2.1 (1979). [2]

The § 244 issue usually arises in an alien's deportation hearing.  It can arise, however, as it did in this case, on a motion to reopen after deportation has been duly ordered. The Act itself does not expressly provide for a motion to reopen, but regulations promulgated under the Act allow such

---

[1] Initially, the Attorney General had no discretion in ordering deportation, and an alien's sole remedy was to obtain a private bill from Congress. See *Foti* v. *INS*, 375 U. S. 217, 222 (1963).  The first measure of statutory relief was included in the Alien Registration Act of 1940, 54 Stat. 670. Under the statutory predecessor of § 244, suspension of a deportation order could be granted only if the alien demonstrated "exceptional and extremely unusual hardship."  Immigration and Nationality Act of 1952, § 244 (a)(1), Pub. L. 414, 66 Stat. 214.  This provision was amended to require that the alien show that deportation would result in "extreme hardship," Act of Oct. 24, 1962, Pub. L. 87–885, § 4, 76 Stat. 1248.

[2] Section 2.1 of the regulations delegates the Attorney General's power to the Commissioner of Immigration and Naturalization, and permits the Commissioner to redelegate the authority through appropriate regulations.  The power to consider § 244 applications in deportation hearings is delegated to special inquiry officers, whose decisions are subject to review by the Board of Immigration Appeals, 8 CFR §§ 242.8, 242.21 (1979). See *Bastidas* v. *INS*, 609 F. 2d 101, 103, n. 1 (CA3 1979).  The Board of Immigration Appeals has the power to consider the question if it is raised on a motion to reopen where the Board has already made a decision in the case.  8 CFR § 3.2 (1979).

a procedure.[3]   The regulations also provide that the motion
to reopen shall "state the new fact to be proved at the re-
opened hearing and shall be supported by affidavits or other
evidentiary material."   8 CFR § 3.8 (a) (1979).   Motions to
reopen are thus permitted in those cases in which the events
or circumstances occurring after the order of deportation
would satisfy the extreme-hardship standard of § 244.   Such
motions will not be granted "when a *prima facie* case of eligi-
bility for the relief sought has not been established."   *Matter
of Lam,* 14 I. & N. Dec. 98 (BIA 1972).   See *Matter of Sipus,*
14 I. & N. Dec. 229 (BIA 1972).

Respondents, husband and wife, are natives and citizens of
Korea who first entered the United States in January 1970
as nonimmigrant treaty traders.   They were authorized to
remain until January 10, 1972, but they remained beyond
that date without permission and were found deportable after
a hearing in November 1974.   They were granted the privi-
lege of voluntarily departing by February 1, 1975.   They did
not do so.   Instead, they applied for adjustment of status
under § 245 of the Act, 8 U. S. C. § 1255, but were found
ineligible for this relief after a hearing on July 15, 1975.[4]
Their appeal from this ruling was dismissed by the Board of

---

[3] Title 8 CFR § 3.2 (1979) provides in pertinent part:

"Motions to reopen in deportation proceedings shall not be granted unless
it appears to the Board that evidence sought to be offered is material and
was not available and could not have been discovered or presented at the
former hearing; nor shall any motion to reopen for the purpose of afford-
ing the alien an opportunity to apply for any form of discretionary relief
be granted . . . unless the relief is sought on the basis of circumstances
which have arisen subsequent to the hearing."

[4] Relief was denied because the immigration judge determined that visa
numbers for nonpreference Korean immigrants were not available, thus
rendering respondents ineligible for the requested relief.   The immigration
judge also stated that he would have denied the application given respond-
ents' failure to move to Salt Lake City where Mr. Wang's sponsoring em-
ployer was located, thus causing doubt whether his services were in fact
needed.

Immigration Appeals in October 1977. Respondents then filed a second motion to reopen their deportation proceedings in December 1977, this time claiming suspension under § 244 of the Act. Respondents by then had satisfied the 7-year-continuous-physical-presence requirement of that section. The motion alleged that deportation would result in extreme hardship to respondents' two American-born children because neither child spoke Korean and would thus lose "educational opportunities" if forced to leave this country. Respondents also claimed economic hardship to themselves and their children resulting from the forced liquidation of their assets at a possible loss. None of the allegations was sworn or otherwise supported by evidentiary materials, but it appeared that all of respondents' close relatives, aside from their children, resided in Korea and that respondents had purchased a dry-cleaning business in August 1977, some three years after they had been found deportable. The business was valued at $75,000 and provided an income of $650 per week. Respondents also owned a home purchased in 1974 and valued at $60,000. They had $24,000 in a savings account and some $20,000 in miscellaneous assets. Liabilities were approximately $81,000.

The Board of Immigration Appeals denied respondents' motion to reopen without a hearing, concluding that they had failed to demonstrate a prima facie case that deportation would result in extreme hardship to either themselves or their children so as to entitle them to discretionary relief under the Act. The Board noted that a mere showing of economic detriment is not sufficient to establish extreme hardship under the Act. See *Pelaez* v. *INS*, 513 F. 2d 303 (CA5), cert. denied, 423 U. S. 892 (1975). This was particularly true since respondents had "significant financial resources and there [was] nothing to suggest that the college-educated male respondent could not find suitable employment in Korea." With respect to the claims involving the children, the Board ruled that the alleged loss of educational opportunities to the

young children of relatively affluent, educated Korean parents did not constitute extreme hardship within the meaning of § 244.

The Court of Appeals for the Ninth Circuit, sitting en banc, reversed. 622 F. 2d 1341 (1980). Contrary to the Board's holding, the Court of Appeals found that respondents had alleged a sufficient prima facie case of extreme hardship to entitle them to a hearing. The court reasoned that the statute should be liberally construed to effectuate its ameliorative purpose. The combined effect of the allegation of harm to the minor children, which the court thought was hard to discern without a hearing, and the impact on respondents' economic interests was sufficient to constitute a prima facie case requiring a hearing where the Board would "consider the total potential effect of deportation on the alien and his family." *Id.*, at 1349.

The Court of Appeals erred in two respects. First, the court ignored the regulation which requires the alien seeking suspension to allege and support by affidavit or other evidentiary material the particular facts claimed to constitute extreme hardship. Here, the allegations of hardship were in the main conclusory and unsupported by affidavit. By requiring a hearing on such a motion, the Court of Appeals circumvented this aspect of the regulation, which was obviously designed to permit the Board to select for hearing only those motions reliably indicating the specific recent events that would render deportation a matter of extreme hardship for the alien or his children.[5]

---

[5] Other Courts of Appeals have enforced the evidentiary requirement stated in 8 CFR § 3.8 (1979). See, *e. g., Oum* v. *INS,* 613 F. 2d 51, 54 (CA4 1980); *Acevedo* v. *INS,* 538 F. 2d 918, 920 (CA2 1976). See also *Tupacyupanqui-Marin* v. *INS,* 447 F. 2d 603, 607 (CA7 1971); *Luna-Benalcazar* v. *INS,* 414 F. 2d 254, 256 (CA6 1969).

Prior to the present procedures, the grant or denial of a motion to reopen was solely within the discretion of the Board. See *Arakas* v. *Zimmerman,* 200 F. 2d 322, 323–324, and n. 2 (CA3 1952). The present regu-

Secondly, and more fundamentally, the Court of Appeals improvidently encroached on the authority which the Act confers on the Attorney General and his delegates. The crucial question in this case is what constitutes "extreme hardship." These words are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute. Here, the Board considered the facts alleged and found that neither respondents nor their children would suffer extreme hardship. The Board considered it well settled that a mere showing of economic detriment was insufficient to satisfy the requirements of § 244 and in any event noted that respondents had significant financial resources while finding nothing to suggest that Mr. Wang could not find suitable employment in Korea. It also followed that respondents' two children would not suffer serious economic deprivation if they returned to Korea. Finally, the Board could not believe that the two "young children of

lation is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened. See *Villena* v. *INS,* 622 F. 2d 1352 (CA9 1980) (en banc) (Wallace, J., dissenting). In his dissent, Judge Wallace stated that INS had discretion beyond requiring proof of a prima facie case:

"If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations." *Id.,* at 1362.

affluent, educated parents" would be subject to such educational deprivations in Korea as to amount to extreme hardship. In making these determinations, the Board was acting within its authority. As we see it, nothing in the allegations indicated that this is a particularly unusual case requiring the Board to reopen the deportation proceedings.

The Court of Appeals nevertheless ruled that the hardship requirement of § 244 is satisfied if an alien produces sufficient evidence to suggest that the "hardship from deportation would be different and more severe than that suffered by the ordinary alien who is deported." 622 F. 2d, at 1346. Also, as Judge Goodwin observed in dissent, the majority of the Court of Appeals also strongly indicated that respondents should prevail under such an understanding of the statute. *Id.*, at 1352. In taking this course, the Court of Appeals extended its "writ beyond its proper scope and deprived the Attorney General of a substantial portion of the discretion which § 244 (a) vests in him." *Id.*, at 1351 (Sneed, J., dissenting).

The Attorney General and his delegates have the authority to construe "extreme hardship" narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the "extreme hardship" language, which itself indicates the exceptional nature of the suspension remedy. Moreover, the Government has a legitimate interest in creating official procedures for handling motions to reopen deportation proceedings so as readily to identify those cases raising new and meritorious considerations. Under the standard applied by the court below, many aliens could obtain a hearing based upon quite minimal showings. As stated in dissent below, "by using the majority opinion as a blueprint, any foreign visitor who has fertility, money, and the ability to stay out of trouble with the police for seven years can change his status from that of tourist or student to that of permanent resident without the inconvenience of immigration quotas. This strategy is not fair to those waiting for a quota." *Id.*,

at 1352 (Goodwin, J., dissenting). Judge Goodwin further observed that the relaxed standard of the majority opinion "is likely to shift the administration of hardship deportation cases from the Immigration and Naturalization Service to this court." *Id.*, at 1351.

We are convinced that the Board did not exceed its authority and that the Court of Appeals erred in ordering that the case be reopened. Accordingly, the petition for certiorari is granted, and the judgment of the Court of Appeals is reversed.

*So ordered.*

JUSTICES BRENNAN, MARSHALL, and BLACKMUN would grant the petition for certiorari and give the case plenary consideration.