Anthony Corbett SULLIVAN, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 84–7317.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1984.

Decided Sept. 30, 1985.

Pregerson, Circuit Judge, filed dissenting opinion.

David M. Brown, Brown, Weston & Sarno, Beverly Hills, Cal., for petitioner.

Dzintra I. Janavs, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before CHAMBERS, KENNEDY, and PREGERSON, Circuit Judges.

KENNEDY, Circuit Judge:

Petitioner Anthony Sullivan appeals from a decision of the Board of Immigration Appeals (BIA) denying his application for suspension of deportation. The BIA did not abuse its discretion in determining that no extreme hardship is disclosed in the application, and we affirm.

Sullivan, a native and citizen of Australia, entered the United States in February 1973 as a nonimmigrant visitor authorized to remain in the country until January 1974. In April 1975, the Immigration and Naturalization Service (INS) commenced deportation proceedings against him, and in June a continuance of the deportation hearing was granted to permit Sullivan to file for asylum on the ground that, as a homosexual, he would be persecuted upon his return to Australia. In April 1975, Sullivan and one Richard Adams obtained a marriage license and participated in a marriage ceremony conducted by a minister in Colorado. Adams attempted to obtain an immigrant visa for Sullivan on the basis of Sullivan's newly acquired status as an alleged spouse of an American citizen, and the deportation proceedings against Sullivan were adjourned during the pendency of Adams' visa petition. The visa petition was denied by the INS, a decision that we affirmed. *Adams v. Howerton,* 673 F.2d 1036 (9th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). We held that even assuming for analytic purposes the validity of the marriage under Colorado law, the marriage would be insuf-

ficient to confer spousal status for purposes of federal immigration laws. *Id.* at 1040.

The deportation hearings resumed in February 1980, and Sullivan requested a further continuance to apply for suspension of deportation on the ground that his deportation would result in extreme hardship both to himself and to Adams. Sullivan's argument is based on two principal points first, that severance of his relation with Adams will cause him personal anguish and hurt, and, second, that deportation to Australia will cause him undue hardship because homosexuals are not accepted in that society and because the members of his own family who live in Australia have turned against him. Even if all of Sullivan's arguments are accepted at face value, they do not necessarily constitute a showing of extreme hardship as the term is defined in the immigration laws. We further find the Board has given adequate consideration to the individual claims in the case to exercise its discretion to deny the application.

■■ We review the BIA's finding of no extreme hardship for an abuse of discretion. *Zavala-Bonilla v. INS,* 730 F.2d 562, 567 (9th Cir.1984); *see also INS v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). The BIA, however, must articulate its reasons for denying relief and must demonstrate that it has considered all factors relevant to the hardship determination. *Mattis v. INS,* 756 F.2d 748, 750 (9th Cir.1985); *Patel v. INS,* 741 F.2d 1134, 1137 (9th Cir.1984); *Zavala-Bonilla,* 730 F.2d at 567; *Contreras-Buenfil v. INS,* 712 F.2d 401, 403 (9th Cir.1983) (per curiam); *Prapavat v. INS,* 662 F.2d 561, 562 (9th Cir.1981) (per curiam).

■■ The requirement of articulated findings by the BIA serves two purposes. First, it ensures that each alien receives consideration of the circumstances unique to his or her case. Second, it provides the reviewing court with a record from which it can determine whether the BIA properly exercised its discretion. The BIA has satisfied these requirements in the case before us. The BIA decision demonstrates particular attention to the specific claims raised by petitioner and provides us with an adequate record upon which to review the BIA's discretionary determination. The BIA summarized Sullivan's arguments as follows:

> The respondent claims that his deportation would result in "extreme hardship" to himself and to his United States citizen male "spouse" or "life partner." He alleges extreme hardship to himself based on the separation from his "life partner" whom he "married" and has lived with continuously since April 1975, and who would probably not qualify as an immigrant under Australian immigration laws. He claims that as a result of his open homosexuality his family and friends in Australia have disowned him and that he no longer has any family ties there. He further claims the inability to find suitable employment if returned to Australia due to the economic conditions in that country, its hostility toward homosexuals, and his absence from the job market for more than 10 years. The respondent stated that he is a viable and respected member of the Los Angeles community and in particular a leader in the Gay Community there.

The BIA further recognized that, "[t]he elements to establish 'extreme hardship' are necessarily dependent upon the facts and circumstances of each case."

Mindful of this principle, the BIA considered each of the individual hardships alleged by Sullivan in his application. It concluded that his separation from Adams did not amount to extreme hardship because "[s]eparation from those upon whom one has become dependent is common to most aliens who have spent a considerable amount of time in the United States." It found petitioner's claims regarding the difficulty of readjustment to life in Australia to be "the type of hardship experienced by most aliens who have spent time abroad." It found that the claimed lack of job opportunities did not amount to extreme hard-

ship and, in so finding, noted that Sullivan "has not worked in the United States since 1977...." Finally, it discounted petitioner's community ties in Los Angeles because they were acquired during the period he was illegally present in this country. The BIA refused to consider the hardship to Adams because he was not "a qualifying relative to whom hardship may be shown under the express provisions of the statute." This interpretation of the statute fully comports with the law of this circuit. *Adams*, 673 F.2d at 1040. The BIA, after explicitly considering all factors relevant to the hardship determination in this case, concluded that these factors did not amount to the special and unique circumstances required to support a finding of extreme hardship sufficient to warrant suspension of deportation.

Deportation rarely occurs without personal distress and emotional hurt. Various courts have previously upheld orders of the BIA that resulted in the separation of aliens from members of their families, *see, e.g., Amezquita-Soto v. INS*, 708 F.2d 898, 902 (3d Cir.1983); *Guadarrama-Rogel v. INS*, 638 F.2d 1228, 1230 (9th Cir.1981); *Banks v. INS*, 594 F.2d 760, 763 (9th Cir. 1979) (per curiam); *Noel v. Chapman*, 508 F.2d 1023, 1027–28 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975), or placed aliens in war-torn countries in which life can be deemed harsh, if not brutal, *see, e.g., Saballo-Cortez v. INS*, 749 F.2d 1354, 1357–58 (9th Cir.1984); *Zepeda-Melendez v. INS*, 741 F.2d 285, 289–90 (9th Cir.1984); *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982). Against this background, the individual application before us does not demonstrate that the BIA abused its discretion. The Board considered the petitioner's individual claims on their merits and acted within its authority in denying the application.

The BIA has discretion to construe extreme hardship narrowly when dealing with suspension of deportation. *Wang*, 450 U.S. at 145, 101 S.Ct. at 1031. It did not abuse that discretion here.

The decision of the BIA is AFFIRMED.

PREGERSON Circuit, Judge, dissenting.

I dissent. For the reasons stated below, I believe the BIA abused its discretion in denying Sullivan's application for suspension of deportation.

As the majority correctly notes, immigration authorities may construe "extreme hardship" narrowly in cases concerning suspension of deportation. *INS v. Wang*, 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1980) (per curiam). However, "[w]hen important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary." *Santana-Figueroa v. INS*, 644 F.2d 1354, 1356 (9th Cir.1981). *See also Zavala-Bonilla*, 730 F.2d 562, 567 (9th Cir.1984) (the BIA must consider all circumstances relevant to the hardship determination); *Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983) (per curiam) (same). Further, when the BIA employs conclusory statements in dismissing an alien's claims, a court may decide that the BIA abused its discretion by failing to " 'give reasons which show that it has properly considered the facts which bear on its decision.' " *Prapavat v. INS*, 662 F.2d 561, 562 (9th Cir.1981) (per curiam) (quoting *Mejia-Carrillo v. INS*, 656 F.2d 520, 522 (9th Cir.1981)). *See also De La Luz v. INS*, 713 F.2d 545, 546 (9th Cir.1983) (per curiam) (BIA must view situation realistically). Here, the BIA failed to comply with these guidelines. And, in concluding that the BIA adequately considered each of Sullivan's alleged hardships, I believe the majority overlooks these requirements as well.

Sullivan alleged that his deportation would result in "extreme hardship" because of a number of unique and special circumstances. Sullivan alleged extreme personal and emotional hardship due to his forced separation from Adams, whom he "married" and has lived with continuously since 1972. Sullivan contended that information from the Australian government suggested that Adams, a car rental agent, would not be eligible to become a permanent resident of Australia. Moreover, even

if Adams could somehow gain permanent residence in Australia, he testified that his ethnic background, Filipino, probably would make it difficult for him to get a job in Australia due to racial prejudice.

Sullivan further stated that he has no community ties in Australia whatsoever and that his family members who live in Australia have ostracized him. Finally, Sullivan contended that the notoriety his case has attracted in Australia—a country allegedly intolerant of open homosexuality—would severely hamper his employment prospects there. On the other hand, he points out that his extensive community ties and good reputation for community service in the United States enhance his employment prospects here.

The majority apparently overlooks the fact that the BIA distorted or disregarded Sullivan's hardship claims with abstract, generalized statements and failed to evaluate Sullivan's special circumstances realistically as required by the Ninth Circuit authority cited above.

The BIA interpreted Sullivan's claim that deportation and consequent separation from Adams would cause him extreme personal and emotional hardship as mere "general hardship and emotional adjustments" and concluded:

> Separation from those upon whom one has become attached or dependent is common to most aliens who have spent a considerable amount of time in the United States; it is not the type of hardship, absent special or unique circumstances, Congress intended to remedy when it enacted section 244(a)(1).

The BIA's conclusory treatment of Sullivan's situation "gave no individualized consideration to the particulars" of the case. *See Prapavat*, 662 F.2d at 562. The BIA gave no recognition to the strain Sullivan would experience if he were forced to separate from the person with whom he has lived and shared a close relationship for the past twelve years. This failure to recognize Sullivan's emotional hardship is particularly troublesome because he and Adams have lived together as a family. *See Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983) ([T]he most important single factor in determining "extreme hardship" may be the separation of the alien from "family living" in the United States); *Ramirez-Gonzalez v. INS*, 695 F.2d 1208, 1211 (9th Cir.1983) ("The breakup of family ties is a relevant factor to consider in determining hardship."); *Urbano de Malaluan v. INS*, 577 F.2d 589, 594 (9th Cir.1978) (same).

The BIA also gave short shrift to Sullivan's assertions of employment difficulty and ostracism by his family and former friends in Australia. The BIA concluded that "[t]he lack of job opportunities or the existence of a lower standard of living in the country of an alien's birth or residence" do not constitute extreme hardship, and that Sullivan's readjustment to life in his native country would be "the type of hardship experienced by most aliens who have spent time abroad." These statements distort Sullivan's contentions. Sullivan did not contend that Australia had "fewer job opportunities" or a "lower standard of living"—but rather that he, as a highly publicized homosexual, would be forced to find employment in a country alleged to be much more intolerant of homosexuals than the United States. Sullivan's readjustment to life in Australia would be quite *contrary* to that of "most aliens." As Sullivan points out, most deported aliens do not return to their native country as virtual outcasts from their friends and family. And, most deported aliens can return to their native lands with their closest companions. But Sullivan would be precluded from doing so because Adams allegedly would not be permitted to emigrate to Australia.[1]

---

1. The BIA also should have factored Sullivan's extensive community service into its hardship determination. *See Villena v. INS*, 622 F.2d 1352, 1357 (9th Cir.1980) (en banc) (The Board should consider an alien's contribution to the community. While the success of the community projects did not depend on Sullivan's presence, "[the alien's] involvement in such projects does support his allegation that he has become integrated into the American culture.").

Rather than viewing Sullivan as an individual human being, the BIA "tacitly invoked a floodgates argument by simply assuming that 'most deported aliens' would experience the same degree of hardship as [Sullivan]. This approach, approved of by the majority, ignores the rule that each hardship case 'must be decided on its own facts.'" *Prapavat,* 662 F.2d at 562, (quoting *Banks v. INS,* 594 F.2d 760, 762 (9th Cir.1979)).

Finally, I disagree with the majority's support of the BIA's conclusion that it was not until after 1974, when Sullivan was out of legal status, that he acquired the relationship and community and family ties he relied on to support his suspension application. Again, the BIA distorted the facts. Sullivan presented uncontradicted evidence that he met Adams in 1971 and began living with him in 1972. While Sullivan's community ties and relationships were certain to increase over the years, it is misleading to suggest they did not begin until after he was out of legal status.

The BIA also erroneously concluded that because Adams did not fit within a category identified in 8 U.S.C. § 1254, it was prohibited from considering the hardship Adams would experience if Sullivan were deported. While the BIA may not have been required to consider hardship to Adams, it erred in concluding that it was prohibited from doing so. The BIA may consider the hardship to significant relations not specified in the statute. *See Villena v. INS,* 622 F.2d 1352, 1360 (9th Cir. 1980) (hardship to an alien's brother, a United States citizen, should be considered even though siblings are not specifically mentioned in section 1254); *Contreras-Buenfil,* 712 F.2d at 403 (the board might have considered hardship to the son of the woman with whom the alien was living in the United States).

The BIA also failed to consider the adverse consequences of deportation cumulatively in determining whether "extreme hardship" existed. *See Prapravat,* 662 F.2d at 562; *Villena,* 622 F.2d at 1357, 1359. In evaluating Sullivan's situation,

the BIA appeared to weigh each significant factor independently. The BIA, for example, stated that Sullivan's separation from his "life partner" would not cause him hardship "sufficient to rise to the level of extreme hardship contemplated by the Act," that "[t]he lack of job opportunities ... is not synonymous with 'extreme hardship,' and that Sullivan's readjustment to life in Australia would not be "the type of hardship that we have characterized as extreme." The BIA should have evaluated these factors not in isolation but cumulatively, *see Prapavat,* 662 F.2d at 562. Again, the majority overlooks this defect.

For the foregoing reasons, I would remand this matter to the BIA for further consideration in harmony with Ninth Circuit authority.