Rafeal **RAMIREZ–DURAZO**, Rosa Isela **Lopez de Ramirez**, Luz Maria **Ramirez-Alcaraz**, Maria Sara **Ramirez-Alcaraz**, Petitioners,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

C.A. No. 85–7213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1986.

Decided July 14, 1986.

As Amended Sept. 2, 1986.

Edgar-Soto & Soto, P.C., Zada Edgar-Soto, Tucson, Ariz., for petitioners.

James A. Hunolt, Joan E. Smiley, Washington, D.C., for respondent.

Petition for Review of an Order of the Board of Immigration Appeals.

Before: HUG, BEEZER and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

Petitioners, husband, wife, and two children, citizens of Mexico, seek review of a decision of the Board of Immigration Appeals affirming an immigration judge's order excluding the wife from admission to the United States and denying the applications of the other petitioners for suspension of deportation. We dismiss the wife's appeal for lack of jurisdiction over a direct appeal from an exclusion order, and deny the petition of the other aliens.

## BACKGROUND

Rafael Ramirez-Durazo and Rosa Isela Lopez de Durazo, husband and wife, are citizens of Mexico. They have three children, one of whom is a citizen of the United States. The other two children, Luz Maria Ramirez-Alcarez and Maria Sara Ramirez-Alcarez, are Mexican citizens.

These four petitioners entered the United States in 1977 as nonimmigrant visitors for pleasure authorized to remain for fifteen days. They were for a time beneficiaries of the injunction in *Silva v. Levi*, No. 76–C–4268 (N.D.Ill. Mar. 22, 1977), under which

the Immigration and Naturalization Service ("INS") was enjoined from deporting certain Western Hemisphere aliens because of an erroneous allocation of visas to Cuban refugees. The *Silva* injunction was vacated on November 1, 1981.

Rosa, the wife and mother, returned to Mexico for three days in March, 1980. She was permitted to return to the United States pursuant to a grant of "parole."

In 1982, deportation proceedings were commenced against Rafael, the husband and father, and the two Mexican children. At the same time, exclusion proceedings were commenced against Rosa. The family was represented by a layman accredited through an organization providing immigration services to indigent aliens. Through this representative, the family requested a joint exclusion-deportation hearing.

At the conclusion of the proceedings in 1983, the IJ found Rosa excludable and statutorily ineligible for suspension of deportation. The IJ denied the petitions of Rafael and the two Mexican children for suspension of deportation, finding they had not demonstrated that deportation would result in "extreme hardship." The decision was affirmed by the Board of Immigration Appeals ("BIA").

**I**

**EXCLUSION PROCEEDINGS**

The IJ ordered Rosa Isela Lopez de Durazo, the wife and mother, excluded from admission to the United States.[1] Section 235(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(a), permits the INS to examine "[a]ll aliens" who seek "admission or readmission" to the United States. Although Rosa was granted advance permission to return to this country,

the INS contends she is subject to exclusion proceedings because she had left the United States and seeks readmission.

■ Only those aliens "entering" the United States are subject to exclusion proceedings. *Landon v. Plasencia,* 459 U.S. 21, 28, 103 S.Ct. 321, 326, 74 L.Ed.2d 21 (1982). However, the Supreme Court has held that the issue of whether an alien is subject to exclusion, rather than deportation, is properly litigated in exclusion proceedings. *Id.* at 32, 103 S.Ct. at 329.

We would have jurisdiction to hear Rosa's direct appeal from the BIA if the IJ's order were a final order of deportation. INA § 106(a), 8 U.S.C. § 1105a(a). However, section 106(b) of the INA, 8 U.S.C. § 1105a(b), provides that "any alien against whom a final order of exclusion had been made ... may obtain judicial review of such order by habeas corpus proceedings and not otherwise." *See generally Patel v. Landon,* 739 F.2d 1455, 1456 n. 1 (9th Cir.1984).

In *Castillo-Magallon v. INS,* 729 F.2d 1227 (9th Cir.1984), we considered a similar case in which alien beneficiaries of the *Silva* injunction, after traveling to Mexico for two weeks, were allowed to return to the United States as "parolees." The aliens were subsequently placed in exclusion proceedings and were not permitted to apply for suspension of deportation. The aliens then sought review directly to this court. We dismissed the appeal for lack of jurisdiction, saying that "[r]eview of an exclusion proceeding, even one in which the IJ's jurisdiction is challenged, is available only in a habeas corpus proceeding in district court." *Id.* at 1229.

Rosa contends that a different result is mandated in this case because the IJ held a combined exclusion and deportation pro-

---

1. As the Supreme Court in *Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 325, 74 L.Ed.2d 21 (1982), explained:

The immigration laws create two types of proceedings in which aliens can be denied the hospitality of the United States: deportation hearings and exclusion hearings. See generally *Leng May Ma v. Barber,* 357 U.S. 185, 187,

78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958). The deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of proceeding against an alien outside the United States seeking admission.

ceeding. She argues that evidence concerning whether she was subject to exclusion proceedings was decided in the "deportation phase" of the hearing, and thus this court has jurisdiction to review her claims as a petition from a "final order[ ] of deportation." *See* INA § 106(a), 8 U.S.C. § 1105a(a). This argument cannot be sustained.

The IJ's decision was not made in any "phase" of the hearing, but rather at the conclusion of all the evidence. The IJ was cognizant of the distinct nature of the two proceedings and separately addressed the issues of deportability and excludability. The IJ stated that the proceeding was conducted with the understanding that Rosa was in exclusion proceedings while the other petitioners were in deportation proceedings.

■ More importantly, the jurisdictional statute refers to judicial review of an *"order"* of exclusion, not review over a certain type of hearing or proceeding. *See* INA § 106(b), 8 U.S.C. § 1105a(b). Since there is no doubt that the IJ intended to issue an order of exclusion, we lack jurisdiction to hear the appeal. *See Castillo-Magallon,* 729 F.2d at 1228.

## II

### DEPORTATION PROCEEDINGS

The IJ found Rafael Ramirez-Durazo, the husband and father, and the two Mexican children deportable, and denied their petitions for suspension of deportation.

### A. *Joint Exclusion-Deportation Proceeding*

■ The petitioners claim the IJ exceeded his authority in holding a combined deportation and exclusion hearing, asserting that the statute and regulations do not authorize such a proceeding. An IJ is au-

thorized to conduct both exclusion and deportation proceedings. INA § 236(a), 8 U.S.C. § 1226(a); INA § 242(b), 8 U.S.C. § 1252(b); 8 C.F.R. § 3.10. With respect to deportation proceedings, an IJ is authorized to determine deportability, to adjudicate certain applications, and "to take any other action consistent with applicable law and regulations as may be appropriate." 8 C.F.R. § 242.8(a). In exclusion cases, "[s]ubject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases." 8 C.F.R. § 236.1. The IJ thus is empowered to exercise a reasonable degree of latitude in conducting deportation and exclusion proceedings. Petitioners' counsel conceded at oral argument that there is no express statutory or regulatory bar to the joining of exclusion and deportation proceedings; thus it was not an error per se to proceed jointly.

■ Still, the question remains as to whether the IJ's decision to conduct the joint hearing was an abuse of discretion under the facts of this case. It is difficult to so conclude. As the IJ noted, this was an unusual case involving members of a single family, and the family's representative had requested a joint hearing on their behalf. Under such circumstances, it was not a clear abuse of discretion to conduct the joint hearing, provided no actual prejudice to the petitioners resulted.

Joining exclusion and deportation proceedings together is an inadvisable practice, as the BIA noted in its decision, due to the possibility of prejudice against an alien subject to deportation proceedings. An alien in deportation proceedings is entitled to certain procedural protections and substantive rights not available in an exclusion proceeding.[2] *See generally Landon v.*

2. The regulations issued under the authority of section 242(b) of the INA, 8 U.S.C. § 1252(b), require in most deportation proceedings that the alien be given seven days' notice of the charges against him, 8 C.F.R. 9242.1(b), while there is no similar requirement as to an alien

subject to exclusion proceedings. If the INS prevails in a deportation proceeding, the alien may appeal directly to the courts of appeals, INA § 106(a), 8 U.S.C. § 1105a(a), while an alien can challenge an exclusion order only by a petition for a writ of habeas corpus, INA

*Plasencia,* 459 U.S. 21, 25–26, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982).

■ Most importantly, constitutional due process protections adhere to an alien who has obtained admission, lawfully or otherwise, to this country but is subject to deportation proceedings. *Landon v. Plasencia,* 459 U.S. at 32, 103 S.Ct. at 329. By contrast, an alien seeking admission to the country, and thus subject to exclusion proceedings, "requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Id.; see also Shaughnessy v. Mezei,* 345 U.S. 206, 215, 73 S.Ct. 625, 630, 97 L.Ed. 956 (1953) (no due process rights for non-entrant aliens). *But see Landon v. Plasencia,* 459 U.S. at 33, 103 S.Ct. at 329 (returning permanent resident alien is entitled to constitutional protections if absence was not extended).

■ However, there are no allegations in this case that the petitioners were denied any procedural or substantive rights, of statutory or constitutional origin, generally available to those in deportation proceedings. Most significantly, they were permitted to apply for suspension of deportation, a form of discretionary relief available only to aliens in deportation proceedings. *See Castillo-Magallon v. INS,* 729 F.2d 1227, 1228 (9th Cir.1984); *see also* INA, § 244, 8 U.S.C. § 1254(a)(1). Had the IJ limited the rights and protections available to petitioners to that lesser level generally accorded in an exclusion proceeding, a reversible error would have resulted. That did not occur.

The only prejudice the petitioners claim is an alleged confusion in the proceedings resulting from the "intertwining" of evidence relating to Rosa's excludability and evidence relevant to deportation of the other petitioners. Nearly every hearing in-

volving more than one issue results in the disjunctive presentation of evidence relevant to the various issues in the case. Upon the conclusion of all the evidence, the trier of fact parses the evidence relevant to the various issues in making his decision. The record indicates the IJ properly considered the evidence relevant to suspension of deportation, and distinguished the evidence relevant only to Rosa's excludability.

### B. Denial of Suspension of Deportation

Petitioners assert the BIA abused its discretion by denying their applications for suspension of deportation.

■ Section 244 of the INA, 8 U.S.C. § 1254(a)(1), provides that the Attorney General in his discretion may suspend deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of "good moral character"; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." The alien bears the burden of demonstrating both statutory eligibility and that he merits the favorable exercise of discretion. *Bu Roe v. INS,* 771 F.2d 1328, 1333 (9th Cir.1985).

The INS concedes, and the BIA found, that the petitioners had satisfied the 7-year physical presence requirement.

The IJ found that Rafael lacked good moral character. At the hearing, Rafael acknowledged that he had failed to file income tax returns for 1974–1976, and there was evidence of irregularities concerning claims of dependents on his 1982 return. However, although petitioners devote considerable argument to this issue, the IJ expressly stated he was not basing

§ 106(b), 8 U.S.C. § 1105a(b). Further, in deportation proceedings, the alien can, within certain limits, designate the country of deportation, INA § 243(a), 8 U.S.C. § 1253(a); he may seek voluntary departure, INA § 244(e), 8 U.S.C. § 1254(e), thereby avoiding both the stigma of

deportation, INA § 242(b), 8 U.S.C. § 1252(b), and the limitations on his selection of destination, INA § 243(a), 8 U.S.C. § 1253(a); and may seek suspension of deportation, INA § 244(a)(1), 8 U.S.C. § 1254(a)(1).

his decision on Rafael's questionable moral character. Both the IJ and the BIA based their decisions to deny relief from deportation solely on an absence of "extreme hardship." Accordingly, we need not address the element of "good moral character."

■ The sole matter before this court is whether the petitioners have established that their deportation would constitute "extreme hardship" to themselves or to the citizen child. Section 244(a)(1) grants to the BIA the discretion to construe "extreme hardship" narrowly, *INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981), as long as it considers all factors relevant to the hardship determination and states its reasons for denying the requested relief. *Zavala-Bonilla v. INS,* 730 F.2d 562, 567 (9th Cir.1984). We review the BIA's finding of no "extreme hardship" for an abuse of discretion. *Sullivan v. INS,* 772 F.2d 609, 610 (9th Cir.1985).

■ The only allegations of hardship raised by the petitioners involved the lower standard of living in Mexico and the difficulties of readjustment to that culture and environment. These simply are not sufficient. Economic disadvantage alone does not constitute "extreme hardship." *Davidson v. INS,* 558 F.2d 1361, 1363 (9th Cir. 1977). The reduced job opportunities and lower standard of living that the petitioners will face upon deportation to Mexico do not rise to the level of "extreme hardship." The disadvantage of reduced educational opportunities for the children was also considered by the BIA and found insufficient to establish "extreme hardship."

■ The BIA discounted the loss of Rafael's employment and economic advancement in this country because such was acquired while he was illegally present in the United States. *See Sullivan,* 772 F.2d at 611. Contrary to petitioners' arguments, the *Silva* injunction had not altered their status as illegal immigrants. The only "right" the *Silva* injunction provided was the right to be temporarily free from deportation—it was not a right of permanent legal residence.[3] *See Marquez-Medina v. INS,* 765 F.2d 673, 675 n.2 (7th Cir. 1985) ("It is certainly clear that the [*Silva*] injunction was not intended to confer any benefit other than postponing deportation.").[4]

As the BIA noted, the difficulty of readjusting to life in Mexico "is the type of hardship experienced by most aliens who have spent time abroad." *See Sullivan,* 772 F.2d at 610. This problem will be alleviated by the fact that most of the immediate family of both Rafael and Rosa, including their parents and numerous brothers and sisters, are residents and citizens of Mexico. These relatives will be available to assist the family in settling back into the Mexican culture. The fact that the Ramirez-Durazo family has been speaking Spanish in the home will ease the children's transition into Mexican society and schools.

■ Nor has "extreme hardship" to the citizen child been demonstrated so as to support suspension of deportation of his father. An alien illegally present in the United States cannot gain a favored status by the birth of a citizen child. *Davidson,*

---

3. The petitioners can make no claim that they have been "lawfully accorded the privilege of residing permanently in the United States as [immigrants] in accordance with the immigration laws." *See* INA § 101(a)(20), 8 U.S.C. § 1101(a)(20).

4. We recently confirmed that beneficiaries of the *Silva* injunction are not entitled to any special status under the immigration laws. In *Bagues-Valles v. INS,* 779 F.2d 483, 484–85 (9th Cir.1985), we held that aliens holding *Silva* letters who briefly departed the country were not eligible for suspension of deportation as they

could not satisfy the 7-year "continuous physical presence" requirement of section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1). We rejected the argument that they had relied on the *Silva* notices, notifying them of protection from deportation, which they believed permitted them to depart from the country without prejudicing their legal rights against deportation. *Id.* Although they were still protected from deportation by the *Silva* injunction upon their re-entry, that injunction did not immunize them from the legal consequences of departure from the country.

558 F.2d at 1363; *see Bu Roe*, 771 F.2d at 1333. Although the citizen child may share the inconvenience of readjustment and reduced educational opportunities in Mexico, this does not constitute "extreme hardship."

██ The petitioners contend it was an abuse of discretion for the IJ to say that since Rosa was excludable and ineligible for suspension, the IJ had determined that separation of the family unit would be a greater hardship than returning the entire family to Mexico. It would indeed be an abuse of discretion to deport an entire family, even if one member was otherwise entitled to relief from deportation, to prevent separation of family members. Separation of an alien from his family by *his* deportation is a factor to be considered in determining whether deportation should be *denied* as resulting in "extreme hardship." Deportation should never be *ordered* to prevent family separation.

██ However, the IJ's statement, even if interpreted to mean that he would deport the petitioners solely to avoid family separation, was not the basis for the BIA's decision. The BIA, in an independent review of the record, noted only that as the wife was excludable and would be returned to Mexico, the family would not be separated by the deportation of the father and children.

In sum, this case is devoid of those unique extenuating circumstances necessary to demonstrate "extreme hardship" consistent with the "exceptional nature of the suspension remedy." *See INS v. Jong Ha Wang*, 450 U.S. at 145, 101 S.Ct. at 1031. In considering all of the potential hardships alleged individually and together, the BIA reasonably concluded that petitioners have not established that their deportation would result in "extreme hardship."

### C. Notification of Right to Representation

Petitioners contend that the IJ erred by failing to advise them of their right to counsel. Under 8 C.F.R. § 242.16, the IJ is required to advise the alien "of his right to representation, at no expense to the government, by counsel of his own choice authorized to practice in the proceedings."

██ However, the petitioners *were* represented by an accredited non-attorney "counsel" who was "authorized to practice in the proceedings."[5] *See* 8 C.F.R. § 292.1. A non-profit organization may, if recognized by the BIA, designate representatives to practice in immigration proceedings. 8 C.F.R. § 293.2(a). Once recognized, the organization may apply for accreditation of persons as representatives, setting forth the proposed representative's knowledge and experience in immigration law and procedure. 8 C.F.R. § 292.2(d). The petitioners were represented by such an accredited representative.

The IJ had no reason to advise the petitioners of their right to representation when they appeared at the hearing with an accredited representative authorized to practice in such proceedings. He fulfilled his regulatory obligation by asking them at both the initial hearing and the resumed hearing whether the accredited individual was their representative.

### D. Ineffective Assistance of Counsel

██ Finally, petitioners assert that they were denied due process under the Fifth Amendment by virtue of ineffective assistance of counsel. Ineffective assistance of counsel in a deportation proceeding is a denial of due process only "if the proceeding was so fundamentally unfair that the alien was prevented from reason-

---

5. The petitioners appear to be under the misconception that the IJ was required to advise them that their accredited representative was not an attorney. To the contrary, the regulations contemplate representation by accredited laypersons, as well as attorneys. For the purposes of immigration proceedings, an accredited repre-sentative is viewed no differently than an attorney. The petitioners, by being represented by an accredited individual authorized to practice in immigration proceedings, had already availed themselves of their "right to representation."

ably presenting his case." *Lopez v. INS,* 775 F.2d 1015, 1017 (9th Cir.1985). The alien "must show not merely ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Magallanes-Damian v. INS,* 783 F.2d 931, 933 (9th Cir.1986). Such a showing has not been made here.

Petitioners argue that their accredited representative erred by conceding their deportability, which led the BIA to conclude they were illegally present in this country. However, such is indisputably true. As discussed above, the *Silva* injunction did not alter their status as illegal immigrants. The petitioners have not been granted lawful permanent residence status. Indeed, the petitioners even now do not seriously deny deportability.

■ The petitioners assert that their representative erred by failing to present evidence of the petitioners' residence in the United States prior to 1977, when they had re-entered the country from Mexico. They claim it was error to leave proof of this fact to the INS. To begin with, petitioners' present counsel has misread the record. Petitioners' representative elicited substantial testimony from both Rafael and Rosa concerning their residence in the United States from 1974–1976. ER at 035–036, 049–050. She also informed the judge that she had a letter and a witness available as further evidence of this. ER at 048, 051–52. Admission of this further evidence was deemed unnecessary as the INS attorney did not contest this fact. ER at 051–052. At any rate, this evidence was not relevant

to their applications for suspension of deportation. As their earlier residence in the country, from 1974–1976, was interrupted by a return to Mexico, proof of earlier residence did not strengthen their application. The IJ assumed the petitioners had shown the necessary 7-years of "continuous physical presence" beginning in 1977.

■ The petitioners allege error in that their representative failed to rehabilitate Rafael after he was questioned by the IJ concerning his failure to file income tax returns from 1974–1976. Petitioners claim that competent counsel would have anticipated such questions.[6] The petitioners have not demonstrated any resulting prejudice, as the IJ expressly stated that he declined to base his decision on Rafael's lack of good moral character.

■ Petitioners allege their representative erred by asking the petitioners only superficial questions, which denied them the opportunity to demonstrate their eligibility for suspension of deportation. To the contrary, the representative asked the petitioners open-ended questions giving them a full opportunity to present their evidence. *See Lopez,* 775 F.2d at 1017. When they failed to offer anything more than Mexico's lower standard of living and the difficulties of readjustment to support their applications, she attempted to probe further for extenuating circumstances. Apparently, there simply was nothing more to be said on their behalf.[7]

■ The only significant defect in the quality of representation alleged by petitioners was their representative's utter fail-

---

6. Again, petitioners' present counsel apparently has failed to familiarize herself with the record. The petitioners' representative did anticipate this issue. On direct examination, she questioned Rafael concerning his failure to file returns, eliciting his explanation that he believed he was not required to file returns because he did not have a Social Security card. ER at 033. As he repeated the same explanation when questioned by the judge, ER at 047, it is difficult to see what more the representative could have done to prevent the judge from drawing adverse inferences from this evidence.

7. The petitioners have not proffered any new evidence which they believe the representative should have presented at the hearing. Had they done so, their proper remedy would be a motion to the BIA to reopen deportation proceedings, citing the incompetence of counsel as the reason this evidence was not presented at the former hearing. *See Roque-Carranza v. INS,* 778 F.2d 1373, 1374 (9th Cir.1985). If the motion to reopen were denied, petitioners would still be able to challenge that BIA decision in this court as violative of due process. *Id.* at 1374.

ure to file a brief on their behalf in the appeal to the BIA. However, the petitioners have articulated no prejudice that resulted from this omission. The BIA considered the merits of the case and fully reviewed the record. There is no indication that anything added in a brief could have affected the final result.

In sum, the petitioners have not demonstrated that their representation at the deportation hearing was incompetent or ineffective, much less that the representative's ineffective assistance impinged on the fundamental fairness of the proceeding. Her failure to file a brief on appeal to the BIA did not prejudice the petitioners under the circumstances of this case.

APPEAL DISMISSED IN PART; PETITION DENIED IN PART.