113 F.3d 1242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph Antonio Albano PALAFOX, Petitioner,
v.
IMMIGRATION AND NATIONALIZATION SERVICE, Respondent.
 No. 95-70762.
 United States Court of Appeals, Ninth Circuit.
 Argued Feb. 13, 1997.
Submitted March 28, 1997.
Decided May 7, 1997.
 
 1
 Before: SCHROEDER and O'SCANNLAIN, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner Joseph Antonio Albano Palafox ("Palafox"), a citizen of the Phillippines, appeals the decision of the Board of Immigration Appeals ("BIA" or "the Board") declining to suspend his deportation on the grounds that Palafox had failed to establish the requisite "extreme hardship" required for a grant of relief under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(A)(1). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we now affirm.
 
 I. DISCUSSION
 A. Statutory Framework
 
 4
 In order to qualify for suspension of deportation under § 244(a)(1) of the INA, 8 U.S.C. § 125(a)(1), Palafox must show:
 
 
 5
 1) continuous physical presence in the United States for a period of at least seven years immediately preceding the date of application;
 
 
 6
 2) that he has been during all of that period and continues to be a person of good moral character; and
 
 
 7
 3) that he is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to [himself] or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence" in the United States. 8 U.S.C. § 1254(a)(1).
 
 
 8
 The petitioning alien bears the burden of proof in demonstrating that the Attorney General's discretion should be exercised on his behalf. Villena v. INS, 622 F.2d 1352, 1357 (9th Cir.1980).
 
 B. Standard of Review
 
 9
 Where, as here, the BIA has reviewed the IJ's decision de novo, the BIA's denial of an application for suspension of deportation is itself reviewed for abuse of discretion. Hassan v. INS, 927 F.2d 465, 467 (9th Cir.1991); Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995). The BIA has the authority to "construe 'extreme hardship' narrowly," INS v. Jong Ha Wang, 450 U.S. 139, 144-45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981), reh'g denied, 451 U.S. 964, 101 S.Ct. 2037, 68 L.Ed.2d 342 (1981), and the courts will "show considerable deference to the BIA's interpretation of statutes it administers." Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir.1991) (citing Chevron v. Natural Res. Def. Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) and Mahini v. INS, 779 F.2d 1419, 1420 (9th Cir.1986)). Nonetheless, "failure by the BIA to consider all pertinent facts regarding extreme hardship, or failure to articulate the reasons for denying suspension of deportation, is an abuse of discretion." Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995); Santana-Figueroa v. INS, 644 F.3d 1354, 1357 (9th Cir.1981).
 
 
 10
 The BIA's decision will be set aside only if the BIA fails to "give reasons which show that it has properly considered the facts which bear on its decision." Mejia-Carillo v. INS, 656 F.2d 520, 522 (9th Cir.1981). The BIA "must consider all relevant factors because the determination of hardship depends on the specific circumstances of the case." Sullivan v. INS, 772 F.2d 609, 610 (9th Cir.1985).
 
 C. The BIA's Decision
 
 11
 The BIA has properly identified the relevant factors to be weighed in deciding whether an alien or his legally-resident spouse and/or children will face "extreme hardship" upon deportation. These factors include the alien's age; the length of his residence in the United States; his family ties in the United States and abroad; his health; the economic and political conditions in the country to which he may be returned; his financial status, business, or occupation; the possibility of other means of adjustment of status; his immigration history; and his position in the community. The BIA furthermore correctly noted that these factors must be considered in the aggregate in determining whether hardship exists.
 
 1. Family Separation
 
 12
 As a consequence of an amnesty provision, Mrs. Palafox is now a lawful permanent resident of the United States. The Palafoxes' youngest child was born in the United States and is, therefore, a U.S. citizen. Their other child is a citizen of the Philippines, and has been granted voluntary departure status. The Palafoxes represent that should Mr. Palafox be deported, Mrs. Palafox and the American citizen child will remain in the United States. The BIA accepted this representation as true for purposes of rendering its decision. The deportation of Palafox will, therefore, result in the separation of a family that includes a United States citizen and a lawful permanent resident.
 
 
 13
 The BIA acknowledged that Palafox "will certainly suffer emotional hardship upon being separated from family members in the United States, including his two children, his wife and his siblings." Nonetheless, the BIA continued, Palafox has not demonstrated that he or his family will "suffer more than the ordinary pain" that "is generally experienced by aliens who are deported from the United States and leave family members behind."
 
 
 14
 Palafox argues not from case law but from assertions about "common human experience" that separation from his wife and children is sufficient to constitute "extreme hardship" under the statute. Although it is beyond cavil that separation from one's family generally represents a real hardship, more is required to show that the BIA abused its discretion in denying Palafox's application to suspend deportation. Indeed, in keeping with the "exceptional nature of the suspension remedy," Jong Ha Wang, 450 U.S. at 145, 101 S.Ct. at 1031, the "common results of deportation or exclusion are insufficient to prove extreme hardship." Hassan v. INS, 927 F.2d 465, 468 (9th Cir.1991); Shooshtary v. INS, 39 F.3d 1049 (9th Cir.1994).
 
 
 15
 Family separation is a factor to be considered by the BIA in § 1254 proceedings. It is well-settled, however, that the mere fact that an alien has a child born in the United States does not of itself require suspension of deportation. "An alien illegally present in the United States cannot gain a favored status by the birth of a citizen child." Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir.1985). See also Jong Ha Wang, 450 U.S. at 145, 101 S.Ct. at 1031 (the INS may properly reject an interpretation that would lead practically to a situation in which foreign visitors could easily change their immigration status from that of tourist or student to that of permanent resident without the inconvenience of immigration quotas). This is true even though deportation of the parent may in fact necessitate the departure of the citizen child to far less advantageous circumstances in the parent's country of origin. Ramirez-Durazo, 794 F.2d at 499.
 
 
 16
 Palafox does not demonstrate that the suffering caused by his deportation would be anything other than that which must attend the broad run of deportations. Upon appeal, he argues principally that the IJ erroneously concluded that the separation of the family would cause "no suffering." Neither the IJ nor the BIA, however, ever asserted that the Palafoxes would not experience real suffering or hardship due to separation, but rather that Palafox had not shown the requisite "extreme hardship." In requiring a showing of emotional suffering beyond the ordinary, the BIA did not abuse its discretion. As the court explained in Ramirez-Durazo, requiring a showing of "unique extenuating circumstances necessary to demonstrate 'extreme hardship' [is] consistent with the 'exceptional nature of the suspension remedy.' " 794 F.2d at 499 (quoting Jong Ha Wang, 450 U.S. at 145, 101 S.Ct. at 1031). Palafox's argument is directed not to the BIA's factual findings, but to a misplaced attack on the statutory standard as permissibly construed by the BIA.
 
 2. Economic Hardship
 
 17
 Palafox argues that if forced to return to the Phillippines he will necessarily find employment opportunities that are both rarer and less appealing than he has had available to him in the United States. Palafox is an architect by training. Architectural jobs in the Phillippines are less well paid than in the United States, and the work conditions are often "authoritarian" in style. In addition, the building codes have changed greatly since Palafox left the Phillippines, and his return would necessitate a significant period of readjustment.
 
 
 18
 Though Palafox's claims may well be true, the BIA did not abuse its discretion by rejecting Palafox's claim of economic hardship. It is well settled that economic hardship, standing alone, does not constitute extreme hardship. "Difficulty in finding employment or inability to find employment in one's trade or profession is ... mere detriment, relevant to a claim of hardship, but not sufficient to require relief." Santana-Figueroa v. INS, 644 F.2d at 1356. In addition, Palafox has numerous family members still in the Phillippines, who, the BIA reasonably concluded, can give him some assistance in readjusting to life there.
 
 
 19
 Palafox argues that his deportation will force extreme hardship upon his family remaining in the United States. Palafox has until now been the primary income provider. His wife currently earns approximately $9.00 per hour. Palafox's deportation does seem likely to result in a significant reduction in the income to himself and to the legally resident members of his family remaining in the United States. The BIA, however, did not abuse its discretion by denying Palafox's application to suspend deportation. The sort of adverse economic impact expected by Palafox is not exceptional but commonplace in deportations, and even significant reductions in the standard of living have been held not to require by themselves suspension of deportation. Ramirez-Durazo v. INS, 794 F.2d at 498. Moreover, as the Board noted in its decision, the Palafoxes have substantial assets in the United States--worth $195,000 according to their filings in the case. In order to establish hardship within the meaning of the statute, the alien must show uncommonly severe economic detriment. Id. The BIA did not abuse its discretion in concluding that Palafox failed to make the requisite showing.
 
 3. Palafox's Community Ties
 
 20
 Palafox argues that during his stay in the United States he has formed considerable ties to the community. It would, he contends, cause him extreme hardship were he to be forced to relinquish these ties. He points in particular to his involvement with his local church, and the charitable work he has performed in connection therewith.
 
 
 21
 The BIA found that Palafox's separation from these community involvements and charitable works would not "cause him or his family extreme hardship. The ability and desire to perform charitable works is portable, and may be largely duplicated in his native country."
 
 
 22
 Palafox's community involvement is certainly admirable. His showing on appeal, however, does not demonstrate that the BIA abused its discretion when it declined to find that he had shown extreme hardship. Even Palafox himself does not argue that his community ties are exceptional, but rather are the sort formed almost as a matter of course when one has spent an extended period of time in one place. This may be true, but it does not establish that the BIA abused its discretion. The BIA permissibly concluded that given Palafox's significant familial ties in the Phillippines, the loss of community ties in the United States did not rise to the level of extreme hardship. See Patel v. INS, 638 F.2d 1199, 1206 (9th Cir.1980) ("Viewing severance of [normal community] ties as extreme hardship would make the third requirement of § 1254(a)(1) trivial.").
 
 4. The Thoroughness of the BIA's Reasoning
 
 23
 The BIA is required to render a reasoned decision. Mejia-Carillo, 656 F.2d at 522. "The requirement of articulated findings by the BIA serves two purposes. First, it ensures that each alien receives consideration of the circumstances unique to his or her case. Second, it provides the reviewing court with a record from which it can determine whether the BIA properly exercised its discretion." Sullivan, 772 F.2d at 610.
 
 
 24
 The BIA's written consideration of the enunciated factors in the present case is in some respects succinct and not tremendously detailed, but this does not here, however, merit reversal. The BIA does explain its conclusions with an individualized discussion of the merits of Palafox's case, and brevity does not necessarily invalidate a decision. The thoroughness of the BIA's findings and reasoning need be only as thorough as the arguments and the evidence presented to it. "Although we require the Board to state its reasons and properly consider all factors, the preciseness we require of the Board depends upon the preciseness of the proof offered by the petitioner." Shooshtary, 39 F.3d at 1051.
 
 
 25
 Palafox's evidence of family hardship presented to the BIA, as to this court on appeal, consists largely of general statements about the closeness of the family and the likely emotional suffering. Where primarily generalities are offered, as here, a more summary response by the Board is appropriate. Id. The burden of proof lies not with the IJ or the BIA, after all, but with the petitioner seeking suspension of deportation, and the role of the reviewing court is a limited one. "The application of the 'extreme hardship' requirement is committed to the [Board] and will not be overturned simply because we might prefer another interpretation of the statute." Hassan, 927 F.2d at 468 (quoting Alvarez-Madrigal v. INS, 808 F.2d 705, 707 (9th Cir.1987)).
 
 II. CONCLUSION
 
 26
 For the foregoing reasons, the decision of the Board of Immigration Appeals is AFFIRMED.
 
 ORDER
 
 27
 The court having received the letter briefs of the parties filed on February 10 and February 18, 1997, the case hereby is ordered submitted as of March 28, 1997.
 
 
 
 *
 Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3