Juan CERRILLO–PEREZ and Magdalena Cerrillo-Garcia, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 85–7681.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1986.

Decided Feb. 10, 1987.

As Amended March 12, 1987.

Eric T. Nordlof, Kathleen M. Weber, Seattle, Wash., for petitioners.

Stewart Deutsch, Washington, D.C., for respondent.

Before FLETCHER, FERGUSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Petitioners Juan Cerrillo-Perez and Magdalena Cerrillo-Garcia, husband and wife, seek review of a decision by the Board of Immigration Appeals (BIA) upholding the immigration judge's denial of their applications for suspension of deportation.[1] We vacate and remand because the BIA failed to consider the hardship to the three United States citizen children that might result were they to remain in this country following their parents' deportation.

## I. *FACTS*

Juan and Magdalena Cerrillo entered the United States without inspection in 1975. Juan Cerrillo is forty-seven years old with a fourth grade education. Magdalena Cerrillo is forty years old with no formal education. The Cerrillos have nine children. The three youngest children are United States citizens whose ages are presently nine, eight and four. All the school-aged children are enrolled in public schools. English is the primary language of the three citizen children, although they speak Spanish when conversing with their parents.

The Cerrillos own their home which is located in Burlington, Washington. They currently have $22,000 worth of equity in that property. Mr. Cerrillo works as a tractor driver and earns approximately $300 a week. Mrs. Cerrillo works as a farm laborer and earns approximately $152 a week. In addition to the equity in their home, the Cerrillos have $7,000 worth of personal property.

In 1982, the Immigration and Naturalization Service (INS) issued orders to show cause, alleging that the Cerrillos were deportable because they had entered the United States without inspection. The Cerrillos conceded deportability and applied for discretionary relief in the forms of voluntary departure and suspension of deportation. The immigration judge found the Cerrillos ineligible for suspension of deportation due to their inability to prove extreme hardship and granted them voluntary departure. The Cerrillos appealed to the BIA. The BIA dismissed the appeal and affirmed the immigration judge's decision.

## II. *SCOPE OF REVIEW*

The Attorney General has discretion to suspend deportation if an alien: (1) has been present in the United States for a period of not less than seven years; (2) is a person of good moral character; and (3) "is a person whose deportation would ... result in extreme hardship to the alien or to his spouse, parent or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1) (1982). Both the immigration judge and the BIA held that the Cerrillos satisfied the first two requirements, but failed to prove that their deportation would result in extreme hardship. The Cerrillos appeal from the latter finding.

We review BIA determinations regarding extreme hardship under an abuse of discretion standard. *See INS v. Wang,* 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). The BIA has "the authority to construe 'extreme hardship' narrowly." *Id.* at 145, 101

---

1. The applications were made pursuant to section 244(a)(1) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1254(a)(1) (1982).

S.Ct. at 1031. Nonetheless, in reaching its conclusions, "[w]e have consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985); *see also Sullivan v. INS,* 772 F.2d 609, 610 (9th Cir.1985). The BIA is required to consider all relevant factors under 8 U.S.C. § 1254(a)(1) "[b]ecause hardship depends on specific circumstances [and] discretion can be properly exercised only if the circumstances are actually considered." *Santana-Figueroa v. INS,* 644 F.2d 1354, 1356 (9th Cir.1981). Accordingly, "[w]hen important aspects of the individual claim are distorted or disregarded," the BIA has abused its discretion. *Id.*

Although we defer to administrative agency findings, *Wang,* 450 U.S. at 145, 101 S.Ct. at 1031, we "set aside an agency action if [we] find that [t]he agency has relied on factors that may not be taken into account under, or has ignored factors that must be taken into account under, any [governing] source[ ] of law." *A Restatement of Scope-of-Review Doctrine,* 38 Ad. L.Rev. 235, 235 (1986) (§ (b)(2)). Where an agency is required by statute "to 'consider' a factor, the agency must reach 'an *"express and considered conclusion"* about the bearing of (the factor).' " *Central Vermont Railway, Inc. v. ICC,* 711 F.2d 331, 336 (D.C.Cir.1983) (emphasis added) (quoting *Small Refiner Lead Phase-Down Task Force v. EPA,* 705 F.2d 506, 516 (D.C.Cir.1983) (quoting *Weyerhaeuser Co. v. Costle,* 590 F.2d 1011, 1045 (D.C.Cir. 1978))). Moreover, "a litigant may [properly] contend that the applicable statute does not permit the administrator ... to refuse to consider a possibly relevant factor." *Regulatory Procedures Act of 1981: Hearings on H.R. 746 Before the Subcomm. on Administrative Law and Gov'tal Relations of the House Comm. on the Judiciary,* 97th Cong., 1st Sess. 953 (1981) (memorandum prepared for ABA Coordinating Group on Regulatory Reform). Where a possibly relevant factor is "significant enough to step over a threshold requirement of materiality[,] ... any lack of agency response or consideration becomes of concern." *Portland Cement Ass'n v. Ruckleshaus,* 486 F.2d 375, 394 (D.C.Cir. 1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *see also* Levin, *Scope-of-Review Doctrine Restated: An Administrative Law Section Report,* 38 Ad.L.Rev. 239, 263 (1986) (Agency "action should be held arbitrary more readily if the agency does not respond to comments made by participants in the proceeding."). *Compare Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 553–54, 98 S.Ct. 1197, 1216–17, 55 L.Ed.2d 460 (1978) ("cryptic and obscure reference" to a factor cannot serve as basis for "seeking to have that agency's determination vacated on the ground that the agency failed to consider matters 'forcefully presented' ").

### III. *HARDSHIP TO THE UNITED STATES CITIZEN CHILDREN*

In determining extreme hardship, the BIA must consider the adverse consequences flowing from the deportation of the alien—both to the alien and to his "spouse, parent, or child who is a citizen of the United States." 8 U.S.C. § 1254(a)(1). The Supreme Court recently noted that because "the plain language of the statute [is] so compelling, ... the Board is not required ... to consider the hardship to a third party other than a spouse, parent, or child, as defined by the Act." *INS v. Hector,* —— U.S. ——, 107 S.Ct. 379, 381, 93 L.Ed.2d 326 (1986) (per curiam).

■ The hardship to a citizen or permanent resident child may be sufficient to warrant suspension of the parents' deportation. 8 U.S.C. § 1254(a)(1). Here, the Cerrillos have three United States citizen children. The BIA is required to consider all of the possibly relevant factors and to reach an "express and considered conclusion" as to the hardship to them. *See Central Vt. Ry.,* 711 F.2d at 336; *see also Santana-Figueroa,* 644 F.2d at 1356 (noting BIA's obligation actually to consider

the specific circumstances in hardship determinations).

The Cerrillos contend that the BIA failed to consider a relevant factor—the hardship to their United States citizen children if those children remain in the United States following their parents' deportation. The importance and centrality of the family in American life is firmly established both in our traditions and in our jurisprudence. The Supreme Court has said, "[o]ur decisions establish that the Constitution protects the sanctity of the family precisely because it is deeply rooted in the Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977). Moreover, the preservation of family unity is recognized as a critical factor in admitting refugees to a country. *See* United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status 43–4 (1979). Equally important, it is universally recognized that "the family is the natural and fundamental group unit of society and is entitled to protection by society and the state." *Universal Declaration of Human Rights*, G.A.Res. 217, U.N.Doc. A/810. According to H.R.Rep. No. 85–1199, "[t]he legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united." H.R.Rep. No. 1199, 85th Cong., 1st Sess. 7, *reprinted in* 1957 U.S.Code, Cong. & Admin. News 2016, 2020. It is against this background that the BIA must examine the eligibility of an alien to remain in this country when his or her deportation might result in the break-up of a family or otherwise cause hardship to a "spouse, parent, or child, who is a citizen ... or permanent residen[t]" of the United States. 8 U.S.C. § 1254(a)(1).

 Here, the BIA considered the hardship the citizen children would suffer if they were to accompany their parents to Mexico. The BIA found that because the children were young and were capable of speaking some Spanish, they would be able to adjust readily to life in a foreign country. Although it acknowledged that the children would have to make an adjustment to "a new way of life and educational system in Mexico," the BIA held that "such [an] adjustment is not significantly different from that of other children returning to their parents' homeland and does not amount to extreme hardship." The BIA contended further that the Cerrillos could return to an area of Mexico where adequate schooling could be provided for their children.[2] We need not consider the validity of the BIA's findings regarding the children's ability to adjust to life in Mexico because the Board failed entirely to consider the alternative possibility that the citizen children would stay in this country.

Citizen children have, of course, an absolute right to remain in the United States. The Cerrillos' citizen children were born to Mexican nationals here illegally. They are obviously too young to decide for themselves whether to live in Mexico or the United States following their parents' deportation. Accordingly, their parents would be forced to make the decision for them. The Cerrillos are faced with a difficult choice. Either they can keep their family together and bring all of their children with them to Mexico or they can break up their family and arrange for three of their children to remain in this country. Faced with similar dilemmas, parents have often made the painful choice of dividing their family in order to provide members of the younger generation with an opportunity for a better life. In some of these instances, parents have fled their homeland to escape persecution and left their children with friends or relatives; in others the parents have remained and sent their children to a safe haven. To be sure, the Cerrillos' situation is not as dire as that of

---

**2.** The Cerrillos claim that there are no schools in the area of Mexico to which they would ·return if deported.

the families in those cases. Nevertheless, it is certainly understandable that parents like the Cerrillos might choose to let their children grow up as Americans and experience all the advantages that such a life affords.

Here, the Cerrillos have strong community ties. Not only have their neighbors sworn in affidavits that the Cerrillos are an asset to the community, but their parish priest stated that "[t]heir participation and contribution to the church has been invaluable." With such roots, the Cerrillos might be more willing than other parents to allow their children to remain here.

That young American citizens may be separated from their parents—and concomitantly that alien parents may be separated from their children—are relevant factors to be considered in determining extreme hardship.[3] We have stated in a series of cases that the hardship to the alien resulting from his separation from family members may, in itself, constitute extreme hardship. *See, e.g., Mejia-Carrillo v. INS*, 656 F.2d 520, 522 (9th Cir.1981). For example, in *Yong v. INS*, 459 F.2d 1004 (9th Cir.1972), we reversed a BIA decision denying an application for suspension of deportation. We noted that "[i]t is undisputed that deportation would separate petitioner from her husband who is lawfully within the United States as a student. Separation from one's spouse entails substantially more than economic hardship." *Id.* at 1005. We have recently reiterated our finding that under section 1254(a)(1), "[s]eparation of an alien from his family by his deportation is a factor to be considered in determining whether deportation should be denied as resulting in 'extreme hard-

ship.'" *Ramirez-Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986) (emphasis omitted).

Similarly, we have stated that section 1254(a)(1) also obligates the BIA to consider the hardship to family members remaining in this country that would result from the alien's deportation. For example, in *Urbano de Malaluan v. INS*, 577 F.2d 589 (9th Cir.1978), we stressed the importance of evaluating the hardship that would be incurred by citizen children whose parents faced deportation. *Id.* at 594.[4] *Accord In re W*, 5 I & N Dec. 586, 587 (BIA 1953) (extreme hardship established where deportation of the alien would leave citizen children without "anyone to take care of them"; BIA ruled that "respondent's deportation would result in ... hardship to her, to her spouse, and their five citizen children"). And more recently we remanded a case to the BIA because "consideration ... should be given to the hardship to petitioner's citizen children if separated from their mother [upon her deportation] and any consequent cost for the care and placement of the children at public expense." *De La Luz v. INS*, 713 F.2d 545, 546 (9th Cir.1983). These cases stand for the proposition that where a deportable alien has family members who fall within the statutory categories of § 1254(a)(1), the BIA must, at least if requested to do so, consider the hardship to those family members that might result from their separation from the alien. *See also Contreras-Buenfil v. INS*, 712 F.2d 401, 403–04 (9th Cir.1983) ("On remand, the Board should consider [1] the hardship separation from his California family will cause Contreras-Buenfil in addition to [2] the hardship separation will cause his [citizen] daughter.").[5]

---

3. The BIA may not of course, consider the relative advantages of growing up in the United States as an offsetting factor in its determination of the hardship to the citizen children. The advantage of growing up in this country is a right afforded citizens under the Constitution.

4. The continuing vitality of the ruling in *Urbano* that the BIA must reopen proceedings upon the presentation of a prima facie case has been questioned. *See Vasquez v. INS*, 767 F.2d 598,

601 (9th Cir.1985). However, the analysis and holding of *Urbano* regarding the importance of considering separation from family members has not been challenged. *See, e.g., Mejia-Carrillo v. INS*, 656 F.2d 520, 522 (9th Cir.1981). In any event, we do not need to resolve the *Vasquez* question here.

5. Our recent decision in *Alvarez-Madrigal*, 808 F.2d 705 (9th Cir.1987) is not to the contrary. In *Alvarez*, we had previously remanded the

Other circuits have recognized the principle that separation may be a crucial factor in determining extreme hardship. For example, in *Ramos v. INS*, 695 F.2d 181 (5th Cir.1983), the Fifth Circuit implied that the BIA cannot blithely assume that the citizen children will accompany their parents upon deportation. The court stated that:

> there is ample authority in other circuits for the proposition that imposing on grade school age citizen children, who have lived their entire lives in the United States, [a] prolonged and geographically extensive separation from both parents ... is a matter which *normally must be considered* by the INS in its determination of whether 'extreme hardship' has been shown.

*Id.* at 186 (citations omitted) (emphasis added). This view is consistent with our holdings in *Yong, Urbano,* and *De La Luz.*

Similarly, in rejecting a BIA finding of no extreme hardship, the Third Circuit in *Bastidas v. INS*, 609 F.2d 101 (3rd Cir. 1979) explicitly stressed the importance to be given the factor of separation of parent and child. In *Bastidas*, the alien had a nonimmigrant student visa and had married a United States citizen. Bastidas had two children from this marriage. After finding Bastidas deportable, the Immigration Judge (IJ) and the BIA refused to suspend deportation because he was unable to prove extreme hardship. The Third Circuit vacated the BIA's decision, ruling that the failure of the BIA adequately to consider the separation of the father from his citizen son was an abuse of discretion. The court stated:

> Although a survey of existing case law fails to reveal any case like this which

presents the separation of a parent and a child from each other for purposes of a determination of extreme hardship pursuant to § 244(a)(1), the existing case law uniformly emphasizes the importance of the question of the separation of family members from each other for purposes of a § 244(a)(1) extreme hardship determination.

*Id.* at 105. The court explicitly approved of our decisions in *Yong* and *Urbano* in reaching its decision.

The *Bastidas* court based its decision on the premise that "[t]he family and relationships between family members" is of paramount importance. *Id.* Thus, the court ruled that "the separation of family members from one another [is] a serious matter requiring close and careful scrutiny." *Id.* While the *Bastidas* court did not advocate a *per se* rule of extreme hardship when a parent is separated from citizen children, the court held "that where a father expresses deep affection for his child and where the record demonstrates that his actions are consistent with and supportive of his expression of affection, a finding of no extreme hardship will not be affirmed by this court unless the reasons for such a finding are made clear." *Id.*[6] *See also Ravancho v. INS*, 658 F.2d 169, 175 (3rd Cir.1981) (noting the general proposition "that psychological trauma may be a relevant factor in determining whether a United States citizen child will suffer 'extreme hardship' ").

■ We are aware of the principle that "[a]n alien illegally present in the United States cannot gain a favored status merely

---

case because "the BIA had not mentioned the petitioner's claims of hardship due to separation from relatives and the potential hardship to a United States citizen child." *Id.* at 706. In denying the petition for review after reconsideration by the BIA, we noted that on remand the BIA "did consider the hardship of separation from family." *Id.* at 706.

**6.** The Third Circuit reaffirmed and applied the principles of *Bastidas* in *Amezquita-Soto v. INS*, 708 F.2d 898 (3rd Cir.1983). Relying on *Basti-*

*das*, the court found that the BIA did not abuse its discretion because it "discussed petitioner's evidence at length, and ... made clear the reason for [its] conclusion that *neither petitioner nor his daughter* would suffer extreme hardship." *Id.* at 904 (emphasis added). The *Amezquita* Court found the fact that the child—arguably born out of wedlock—had been raised entirely by her grandmother was a significant factor militating against a determination of extreme hardship.

by the birth of his citizen child." *Lee v. INS,* 550 F.2d 554, 555 (9th Cir.1977) (citation omitted). *See also Ramirez-Durazo v. INS,* 794 F.2d 491, 498–99 (9th Cir.1986). However, *Lee* did not abrogate the statutory rule that the hardship to citizen children is a relevant factor for the BIA to consider in determining extreme hardship. In light of post-*Lee* case-law, it is clear that *Lee* and its progeny hold only that the mere fact that a citizen child would accompany an alien when that alien is deported is insufficient, in and of itself, to establish a *per se* case of "extreme hardship." *See, e.g., Lee,* 550 F.2d at 556 ("The possibility of inconvenience to the citizen child is not a hardship of the degree contemplated by the statutory language of extreme hardship.") (citation omitted). *See also Vasquez v. INS,* 767 F.2d 598, 602 (9th Cir.1985) ("mere existence of citizen child does not establish hardship") (characterizing the holding of *Lee* ). To put it more simply, under *Lee* the Attorney General is not required to find extreme hardship in every case in which an alien illegally in this country is the parent of an American born child. Rather, he (or more precisely his delegee, the BIA) must determine whether the statutory requirement has been met on a case by case basis, after first considering all the relevant individual circumstances. *See Santana-Figueroa v. INS,* 644 F.2d at 1356.

■ Similarly, the hardship to a citizen child remaining in this country (as well as the hardship to the parent resulting from the separation) is a factor that must be considered on a case by case basis by the BIA. The BIA must consider the specific circumstances of citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children. *See, e.g., In re W,* 5 I & N Dec. at 586–88. Here, the BIA failed to engage in an inquiry as to the adverse consequences to the Cerillos' citizen children that would occur upon their separation from their parents.

The BIA did not explain why it refused or failed to consider the alternative hardship of separation. However, in its brief to the BIA, the INS argued that it was not necessary for the BIA to consider that factor because "[the] citizen children are of a tender age so that, in all likelihood, they would go with the [Cerrillos] upon their return to Mexico." During oral argument, the INS put its position in even more general terms, stating that most deportable aliens would not leave their citizen children in the United States; accordingly, it urged, there was no need for the BIA to consider the consequences of separation in cases like the Cerrillos.

■ We reject INS's position. Whether we consider its narrow statement—regarding tender aged children—or its broader statement—regarding children in general— the position of the INS is of doubtful validity. Moreover, had the BIA relied in its decision on the argument offered by the INS, such reliance would have reflected the application of an improper *per se* rule. First, the decision whether citizen children of aliens should remain in the United States and enjoy the benefits of life as Americans is a far closer and more difficult one than the INS acknowledges. As we explained earlier, parents do separate from their children when persuaded that such action is in their children's best interests. Second, a *per se* exclusion of a relevant factor is not consistent with the BIA's responsibility both to determine extreme hardship based on individual circumstance, *see Sullivan,* 772 F.2d at 610, and to reach an "express and considered conclusion." *Central Vermont Railway,* 711 F.2d at 336. The BIA cannot adopt a general presumption that separation of parents and children will not occur and thereby relieve itself of its duty to consider applications on an individual basis. It must consider the specific facts and circumstances of each case. In failing to consider the factor of separation, the BIA "overlooked or evaded an inquiry necessary to a reasoned decision." *Trailways, Inc. v. ICC,* 673 F.2d 514, 525 (D.C.Cir.), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982). *See also Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (agency action would be arbitrary if the agency "entirely failed to consider an important aspect of the problem").

### IV. *CONCLUSION*

We recognize that the BIA considered the potential hardship to the citizen children that would result were the children to accompany the Cerrillos following their deportation. However, the Cerrillos also urged the hardship that would result if their three citizen children were to remain in this country. Where, as here, both alternatives are raised—the citizen children accompanying their parents and the citizen children remaining in this country—the BIA is required to consider the resulting hardships in each of these circumstances.

Here, the BIA failed to consider the latter set of hardships. Its failure cannot be justified by the argument of the INS that as a general rule aliens will decide that their children should accompany them to the parents' homeland. In addition to being of doubtful validity, such a presumption is inconsistent with the BIA's responsibility to determine extreme hardship based upon individualized consideration of the actual circumstances of the particular applicants before it. Because the BIA failed to consider the alternative hardship to the citizen children were they to remain in this country, we vacate and remand for such consideration.[7]

VACATED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION

[7.] Our decision, of course, does not affect the possibility that the Cerrillos may be entitled to relief under the newly enacted Immigration Reform and Control Act of 1986, Pub.L. 99–603, 100 Stat. 3359. *See INS v. Hector*, 107 S.Ct. at 383 n. 8.