952 F.2d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ismet YAZKURT, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 90-70409.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Jan. 15, 1992.
 
 Before TANG, REINHARDT and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ismet Yazkurt ("Yazkurt") appeals a Board of Immigration Appeals decision affirming the immigration judge's denial of his application for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1192(c). We affirm.
 
 
 3
 Ismet Yazkurt, a fifty-one year old citizen of Turkey, was granted lawful permanent resident status in the United States in 1966, and has resided in this country almost continuously since that time. On April 29, 1985, Yazkurt was convicted in the United States District Court, District of Maryland, of conspiracy to import heroin into the United States in violation of 18 U.S.C. § 371. Yazkurt was given a suspended five-year sentence, was placed on probation, and fined $10,000 in exchange for his cooperation and guilty plea.
 
 
 4
 The I.N.S. initiated deportation proceedings against Yazkurt on June 18, 1987. Yazkurt was charged with deportability under section 241(a)(11) of 8 U.S.C. § 1251(a)(11), as an alien convicted of a crime relating to a controlled substance. At the conclusion of the hearing, the immigration judge found Yazkurt deportable and ineligible for Section 212(c) relief. The Board of Immigration Appeals ("BIA") upheld that decision. The BIA's decisions denying discretionary relief from deportation are reviewed for abuse of discretion, Vargas v. United States Dep't of Immigration, 831 F.2d 906, 908 (9th Cir.1987), and should be set aside "only if the board fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Id.
 
 
 5
 On appeal, Yazkurt first argues a crime which provides a ground for deportation also cannot be the basis for denying discretionary relief from such deportation. However, this circuit in Vargas, 831 F.2d at 909, upheld the BIA's decision to deny a request for a waiver of deportation to an alien convicted of a drug offense. In Ayala-Chavez v. INS, No. 90-70657, slip op. 13111 (9th Cir. filed Sept. 19, 1991), this circuit again upheld the BIA's rejection of a waiver application when this decision was based primarily on the alien's drug conviction. This argument, therefore, fails.
 
 
 6
 Yazkurt contends that the BIA improperly relied on Matter of Marin, 16 I. & N. Dec. 581 (1978), and unlawfully added an intermediate step between statutory eligibility and the BIA's exercise of discretion. He argues that in Marin, the BIA enlarged upon thirty-eight years of administrative precedent by requiring a showing of unusual or outstanding countervailing equities when discretionary relief from deportation is sought for drug-related offenses. This argument has no merit. This circuit has held that the requirement of "unusual" or "outstanding" equities to offset a criminal drug offense represents a permissible interpretation of the Act. Ayala-Chavez, No. 90-70657, slip op. at 13117.[1]
 
 
 7
 Yazkurt argues that the BIA failed to balance the favorable factors against the adverse factors, and failed to engage in the balancing process required by statute once it found that no unusual or outstanding equities existed. This argument also has no merit.
 
 
 8
 Indeed, the BIA did not reach the discretionary stage of the analysis: "As a primary matter, we find that the respondent must demonstrate unusual or outstanding equities before we will enter into an analysis of whether he merits section 212(c) relief as a matter of discretion ... we find that as a general matter, drug related trafficking offenses are sufficiently serious to require outstanding or unusual equities." BIA decision at 5. However, the Board went on to say, "[a]lthough we have determined that the respondent has not met the threshold requirement of outstanding or unusual equities, we note that had we needed to reach the discretionary stage of section 212(c) analysis, we would not have found in the respondent's favor." Id. Immediately preceding that statement, the BIA did assess Yazkurt's equities:
 
 
 9
 In assessing the respondent's equities, we observe that he has resided in the United States for 23 years, having arrived here when he was approximately 26 years old. In addition the respondent has accumulated extensive real estate holdings, valued in excess of $1,000,000. While these equities are significant, we agree with the immigration judge that, under the circumstances of this case, they are not unusual or outstanding. Regarding the respondent's residence, we note that he arrived here as an adult and has not developed any permanent family ties or demonstrated any particular attachment to his community. Further, he was involved for a 4-year period in a conspiracy to import heroin into this country, and he is still on probation for that crime. With respect to the respondent's real estate holdings, we observe that the record fails to establish how he acquired the properties. Considering the extent of these holdings and the absence of a clear employment history for the respondent, we are particularly troubled by that omission. Further, no objective evidence was provided to support the respondent's contention that he will suffer financial losses from the forced sale of his properties.
 
 
 10
 BIA decision at 5. Remanding this case for the board to evaluate Yazkurt's equities would be useless, and thus inappropriate.
 
 
 11
 Yazkurt also argues that the BIA failed to properly assess his particular culpability in the crime. A review of the record, including the information to which he pled guilty, plainly shows that there was sufficient evidence that Yazkurt's role in the drug trafficking conspiracy was a serious crime. There was testimony that Yazkurt willingly and knowingly participated with Ahmet Kizgin, a Turkish national, in planning a kidnapping in order to collect a heroin debt of $375,000. Yazkurt, it was claimed, knowingly and willingly drove his co-conspirator from Dallas to Houston to effect the kidnapping and collection of the debt. Yazkurt also stated that he knew that $3,000 of his own money was being used to ensure the success of a heroin deal.
 
 
 12
 Yazkurt alleges that there were several factual findings that were erroneous. Most of the errors were committed by the immigration judge. We do not review that decision. Yazkurt alleges, however, that the BIA falsely found that Yazkurt admitted to having a gun with him to consummate the drug deal. Even if Yazkurt did not admit to having a gun, there was substantial testimonial evidence in the record that could have led the BIA to reasonably believe that he did have one in his possession. Moreover, there is no indication that the BIA used this fact in reaching its decision.
 
 
 13
 Finally, Yazkurt argues that the fact he was expecting a child was an equity that the BIA should have considered in balancing his positive and negative factors. The BIA did note his unborn child in their decision, and it was reasonable for them not to consider it as a positive factor. It was not an abuse of discretion for the BIA to find that fathering a child with a woman then married to someone else is not an equity. Moreover, deporting Yazkurt would create no hardship with respect to his relationship with his child because the child's mother testified that, if Yazkurt is deported, she would follow him to Turkey.[2] The record in this respect amply supports the Board's conclusion that Yazkurt "has not developed any permanent family ties." As for Yazkurt's marriage to Teresa Horton, this fact is not part of this appeal and was noted only with respect to his concurrent Motion to Remand Based on New Facts pursuant to 28 U.S.C. § 2347(c). This motion was denied by this circuit (Pregerson, Wiggins, JJ.) on March 22, 1991.
 
 
 14
 PETITION TO REVIEW DENIED.
 
 
 15
 REINHARDT, Circuit Judge, dissenting.
 
 
 16
 It is true, as the majority notes, that we review decisions of the BIA for abuse of discretion. However, we have consistently held that the BIA's written opinion must clearly demonstrate that the board has considered all the relevant factors. See, e.g., Mattis v. United States INS, 774 F.2d 965, 967 (9th Cir.1985); Batoon v. INS, 707 F.2d 399, 401 (9th Cir.1983). In addition, it must provide a fairly and fully reasoned explanation of the basis for its decision. See, e.g., Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981). Here, the BIA opinion does neither.
 
 
 17
 "Cursory, summary or conclusory statements are inadequate." Mattis, 774 F.2d at 967; accord Batoon, 707 F.2d at 401. Where the board has failed to demonstrate that it has adequately considered all the factors, the decision must be reversed because "[t]o affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decision, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion." Santana-Figuaroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981).
 
 
 18
 In Yazkurt's case, the board's consideration of the equities is confined to a single paragraph on page 5 of its decision. In that paragraph, the board considers two equities--the fact that Yazkurt has lived in the United States 26 years and the fact that he has accumulated extensive real estate holdings here. There is no consideration of Yazkurt's imminent fatherhood. Yet, the BIA is commanded by statute to consider the hardship to a citizen child due to deportation of its parent, see 8 U.S.C. § 1254(a), and this hardship may be sufficient, by itself, to warrant suspension of the parent's deportation, see Cerrillo-Perez v. INS, 809 F.2d 1419 (9th Cir.1987). The BIA's failure to consider the soon-to-be-born child violates Mattis.
 
 
 19
 The majority states that "deporting Yazkurt would create no hardship with respect to his relationship with his child because the child's mother testified that, if Yazkurt is deported, she would follow him to Turkey." It is not clear whether the majority is referring to hardship suffered by Yazkurt or by his American-born child, but if the majority is referring to the latter, the statement is rather misleading. The statute directs that the board consider the hardship not only to the deportee, but also to the deportee's citizen children. Those children have "an absolute right to remain in the United States," Cerrillo-Perez, 809 F.2d at 1423. They suffer hardship when they are put to the difficult choice between separation from their father and giving up the benefits of growing up in America. Although in this case the deportation proceedings took place during the child's gestation, it was clear to all concerned that the child would be born an American citizen. Accordingly, the BIA should have considered the hardship imposed on this imminent American citizen by the deportation of his father. Cf. Crumpton v. Gates, No. 90-55117, slip. op. at 15003 (9th Cir. Nov. 4, 1991) (holding that a child's § 1983 action for loss of consortium with his father may be based on unconstitutional acts committed by the state during the child's gestation).[1]
 
 
 20
 The majority also suggests that the board's failure is excusable because "it was reasonable for them not to consider [Yazkurt's imminent fatherhood] as a positive factor. It was not an abuse of discretion for the BIA to find that fathering a child with a woman then married to someone else is not an equity." However, the majority does not indicate where in its opinion the BIA made any such finding. The explanation for the majority's silence is quite simple: the BIA never stated that Yazkurt's imminent fatherhood would not be treated as an equity. Indeed, it did not address the question at all. Our duty as an appellate court is to ensure that the BIA adequately provides reasons for its decision; it is not our function to provide reasons to justify a decision which fails entirely to consider a relevant factor.
 
 
 21
 Our responsibility to ensure that the BIA provide an adequate explanation for its actions is especially important in this instance. Because Yazkurt's child was conceived out of wedlock, his case may arouse irrational yet strongly held prejudices against illegitimate children and thereby presents the danger that the BIA, in exercising its discretion, may have substituted its own personal set of moral beliefs for the term "equity" in § 212. As the Supreme Court has reminded us, "the Constitution prevents [the state] from standardizing its children--and its adults--by forcing all to live in certain narrowly defined family patterns." Moore v. City of East Cleveland, 431 U.S. 494, 506 (1977) (plurality opinion). We no longer live in a society in which a child may be ignored because he is a bastard or a woman treated like Hester Prynne because she has extramarital sex. By allowing the BIA to ignore Yazkurt's family relations without explanation, the majority exercises our appellate jurisdiction in a manner that allows bigotry to flourish.
 
 
 22
 The BIA committed a second crucial error in its opinion. The opinion requires Yazkurt to show "unusual or outstanding equities" because of his participation in a serious drug offense, yet never explains why such a strict standard is applicable to Yazkurt's case. The BIA has adopted a policy of imposing a higher standard for discretionary relief from deportation for deportees "who have been convicted of serious drug offenses, particularly trafficking." Ayala-Chavez v. INS, No. 90-70657, slip. op. at 13115 (9th Cir. Sept. 19, 1991). In this case Yazkurt's sentencing judge chose not to impose any jail time because Yazkurt's role in the drug conspiracy was peripheral at most.[2] Even the prosecuting attorney, in the course of recommending that Yazkurt not be deported, has stated that Yazkurt had a "limited involvement" in the conspiracy. The BIA gives no reason for concluding that Yazkurt should be subjected to the higher standard. It does not either set forth a general rule that anyone convicted of particular types of drug offenses--no matter how slight his role in the offense--will be required to meet the higher standard or offer any reason why Yazkurt's specific conduct was sufficiently "serious" to warrant imposition of the higher standard in this particular case. Had the BIA taken the former approach, we would then be required to determine the lawfulness of such a general rule. Cf. Ayala-Chavez, slip. op. at 13117 ("Clearly, there may be circumstances in which a petitioner's criminal activity is of such a slight nature that application of the higher standard would not be supported by substantial evidence."). Had the BIA taken the latter approach, we would then determine whether imposition of the higher standard for the reasons given constituted an abuse of discretion.
 
 
 23
 Because the BIA failed to give any explanation for its application of the "unusual or outstanding equities" standard to Yazkurt's case, a case plainly raising a serious question regarding the propriety of such an application, its decision cannot be fully and fairly reviewed. The post hoc rationalizations of the majority cannot, consistent with Mattis, cure the defects in the BIA's decision, and reversal is warranted on this ground alone. Taking all these errors together, it is apparent that the BIA's written decision is woefully inadequate. I dissent from the majority's decision to uphold it.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The dissent claims that the BIA needed to state why it chose to conclude that Yazkurt should be subjected to the higher standard of "unusual or outstanding equities" when the sentencing judge chose not to impose any jail time. We disagree with the dissent that the BIA gave no reasons why Yazkurt's crime was serious enough to require the imposition of the higher standard. While it is true that "we cannot assume that the BIA considered factors it failed to mention in its decision," Mattis v. United States, 774 F.2d 965, 967 (9th Cir.1985), the BIA did carefully consider Yazkurt's role in the offense, and reviewed Yazkurt's testimony. Moreover, the BIA noted the fact that Yazkurt "cooperated with a United States Attorney in the investigation of the heroin transactions in exchange for the United States Attorney's recommendation that he not be deported." BIA decision at 3. The BIA's careful review of Yazkurt's participation in drug trafficking makes clear why they concluded that Yazkurt was required to show "unusual or outstanding equities."
 
 
 [2]
 The dissent states that the BIA should have considered the hardship on Yazkurt's unborn child, citing 8 U.S.C. § 1254(a) (1988) (consideration of hardship to citizen child due to deportation of parent required). However, when the BIA was making its decision, the child was not yet a citizen, and there is no statute requiring the BIA to consider hardship to a fetus. The dissent's reference to Crumpton v. Gates, No. 90-55117, slip. op. at 15003 (9th Cir. Nov. 4, 1991) is inapposite, for that case addressed the issue of whether a child may bring a section 1983 action based on the unconstitutional killing of his father before he was born. Whether or not we allow a citizen to bring a section 1983 action because of unconstitutional acts done prior to his birth has nothing to do with whether the BIA abused its discretion by not considering a fetus' welfare at Yazkurt's BIA hearing. Mattis, 774 F.2d at 967, requires that all relevant factors be weighed. The BIA, which was well aware of the potential child, did not consider it a relevant factor. There was no abuse of discretion in this decision
 
 
 [1]
 The majority suggests that it was not an abuse of discretion for the BIA to ignore the impact of its decision to deport Yazkurt on his gestating child. For the reasons stated in the text, I believe the BIA could not lawfully choose to ignore the child. However, the defect in the BIA's decision goes beyond that. The BIA never explains in the opinion why it ignored the child. The reasons it had for doing so may be inadequate or impermissible; indeed, it may be due to inadvertence or mistake. The failure of the BIA to give reasons for ignoring the hardship on the child makes it unnecessary for us to decide whether it lawfully could do so--under Mattis, we must reverse
 
 
 [2]
 The majority suggests that there was sufficient evidence to find that Yazkurt's role in the drug offense was more significant than than found by the sentencing judge. Whether or not this is true--and there is substantial reason to doubt that Yazkurt's role in the conspiracy was significant given the rejection of such a characterization of Yazkurt's role by both the sentencing judge and the prosecuting attorney--this question is irrelevant to our review. Judging from its written decision, the BIA never considered the sentencing judge's characterization of Yazkurt's role and never provided reasons for rejecting that characterization; the BIA simply ignores the sentencing judge's characterization of Yazkurt's offense