112 F.3d 517
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ramon Eleazar SALINAS-PASTORA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70650.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 13, 1996.*
Decided April 23, 1997.
 
 Before: FERGUSON, BEEZER, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner, Ramon Eleazar Salinas-Pastora (Salinas-Pastora) appeals a divided decision of the Board of Immigration Appeals (BIA or Board) denying Salinas-Pastora's application for asylum and withholding of deportation under §§ 208(a) and 243(h) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158(a) and 1253(h), and denying his application for suspension of deportation under § 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1). This court has jurisdiction under § 106 of the INA, 8 U.S.C. § 1105a. We deny review in part and grant in part.
 
 I. ASYLUM AND WITHHOLDING OF DEPORTATION
 
 3
 Salinas-Pastora was a lawyer in Nicaragua and held various positions in the Sandinista government, from which he was forced to resign due to his unwillingness to participate in Sandinista political activities.
 
 
 4
 At a social gathering in November, 1984, he had a dispute with a Sandinista lieutenant. The lieutenant threatened to kill Salinas-Pastora after Salinas-Pastora expressed his opinion that the implementation of communism was the cause of problems in Nicaragua. Salinas-Pastora's food ration card was confiscated after he refused to participate in the Sandinista Defense Committee (CDS). Salinas-Pastora and his wife received many anonymous phone calls and letters, which warned that their lives were in danger because they were against the revolution, and that they would be hung "from the tallest tree."
 
 
 5
 Finally, in April, 1985, three men in military uniforms entered the Salinas-Pastora home with automatic rifles. They asked where the Salinas-Pastoras kept weapons for the Contras, searched the home, and threatened to kill them if they did not turn over the sought-after weapons. Soon after this incident, Salinas-Pastora and his wife sought safety in the United States.
 
 
 6
 In response to Salinas-Pastora's testimony of past persecution, the INS presented evidence of changed country conditions in Nicaragua. This evidence included State Department Reports indicating that participation in Sandinista organizations is no longer required nor sanctioned by the Nicaraguan government, and that there has been no pattern or practice of retaliation against similarly situated returnees.
 
 
 7
 The BIA found that Salinas-Pastora had established neither past persecution nor a well-founded fear of future persecution.
 
 
 8
 Although we do not find Salinas-Pastora's claim to be without substantial support, the Board's review of the changed country conditions was detailed and individualized. We cannot conclude that the evidence presented was so compelling that a reasonable factfinder would have to conclude that Salinas-Pastora established a well-founded fear of future persecution. Accordingly, we deny review of the part of the petition that relates to the request for asylum and withholding of deportation. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Osorio v. INS, 99 F.3d 928 (9th Cir.1996).
 
 II. SUSPENSION OF DEPORTATION
 
 9
 The facts that relate to Salinas-Pastora's suspension of deportation claim are as follows. Salinas-Pastora and his wife, who has petitioned for asylum separately, have two U.S. citizen children, Patricia and Allan, ages 5 and 11 respectively. Allan attends public school and is currently in fifth grade. He speaks, writes, and reads English. He also speaks, but does not read or write, Spanish. Patricia currently attends first grade.
 
 
 10
 Salinas-Pastora's father and two of his sisters live in Canada, as residents. He has a sister in the United States who is also an asylum applicant. His only remaining family in Nicaragua is an 80-year-old aunt.
 
 
 11
 Salinas-Pastora is a former Nicaraguan lawyer who has been steadily and gainfully employed in various blue-collar occupations since arriving in this country over a decade ago. He has submitted federal and state tax forms for the years 1986-1993. Salinas-Pastora has also submitted affidavits from employers and friends attesting that he is an honest and "good, hard-working person" who "would be an asset to this country." The record reflects that he attended community college in 1985 and 1986, and that he attends church services every Sunday.
 
 
 12
 To qualify for relief in the form of suspension of deportation, an alien must establish continuous physical presence in the United States for seven years, good moral character for that time, and extreme hardship to himself or to a spouse, parent, or child who is a citizen or permanent resident of the United States. 8 U.S.C. § 1254(a)(1). The BIA assumed that Salinas-Pastora fulfilled the seven years of continuous physical presence requirement, but did not examine his moral character because it found that he did not adequately show that he or his citizen children would suffer extreme hardship if he were deported.
 
 
 13
 Although the BIA has "the authority to construe 'extreme hardship' narrowly," INS v. Wang, 450 U.S. 139, 145 (1981) (per curiam), this court has required the BIA to "state its reasons and show proper consideration of all factors when weighing equities and denying relief." Cerrillo-Perez v. INS, 809 F.2d 1419, 1422 (9th Cir.1987) (citing Mattis v. INS, 774 F.2d 965, 968 (9th Cir.1985)). When important aspects of an individual claim are distorted or disregarded, denial of relief is arbitrary. Such cases must be remanded to the BIA for proper consideration. Santana-Figueroa v. INS, 644 F.2d 1354, 1356 (9th Cir.1981).
 
 
 14
 The BIA abused its discretion in this case because it failed to consider two important aspects of Salinas-Pastora's claim. The majority failed to appropriately consider the potential hardship of family separation and the impact of Salinas-Pastora's subjective fear of persecution in assessing the hardship deportation would cause him.
 
 A. Family Separation
 
 15
 The emotional and psychological hardship resulting from the separation of family members is highly relevant in determining extreme hardship for suspension of deportation purposes. In fact, the hardship to the petitioner resulting from his separation from family members may, in itself, constitute extreme hardship. Cerrillo-Perez, 809 F.2d at 1425. Here, the BIA failed to consider the possibility of family separation in making its hardship determination. Therefore, the case must be remanded for proper consideration.
 
 
 16
 This court has recognized the difficult choice facing parents of U.S. citizen children should the parents be deported to their home countries. Cerrillo-Perez, 809 F.2d at 1423-24. This dilemma is especially difficult for parents who have fled their homeland in order to escape persecution and are unsure of the current conditions awaiting them. As we stated in Cerrillo-Perez,
 
 
 17
 [T]he hardship to a citizen child remaining in this country (as well as the hardship to the parent resulting from the separation) is a factor that must be considered on a case by case basis by the BIA. The BIA must consider the specific circumstances of citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children.
 
 
 18
 Id. at 1426.
 
 
 19
 In Cerrillo-Perez, the BIA had not explained why it failed to consider the alternative hardship of separation. On appeal, the court rejected the INS's claim that the BIA did not need to consider this possibility because the children were of such a tender age that "in all likelihood, they would go with the [Cerrillos] upon their return to Mexico." Id. (alteration in Cerrillo-Perez). We rejected the INS's argument, noting:
 
 
 20
 First, the decision whether citizen children of aliens should remain in the United States and enjoy the benefits of life as Americans is a far closer and more difficult one than the INS acknowledges.... The BIA cannot adopt a general presumption that separation of parents and children will not occur and thereby relieve itself of its duty to consider applications on an individual basis. It must consider the specific facts and circumstances of each case. In failing to consider the factor of separation, the BIA 'overlooked or evaded an inquiry necessary to a reasoned decision.'
 
 
 21
 Id. (citing Trailways, Inc. v. ICC, 673 F.2d 514, 525 (D.C.Cir.), cert. denied, 459 U.S. 862 (1982)).
 
 
 22
 As the dissenting member of the BIA noted, Salinas-Pastora's wife also had a petition for asylum pending at the time of his deportation hearing. In light of Salinas-Pastora's fear of future persecution and his fear for his children should they return with him to Nicaragua, it is quite possible that if his wife were granted asylum and he were deported, the separation of Salinas-Pastora's citizen children from one of their parents would follow. The BIA disregarded this possibility, failing to take into account the potential outcome of Salinas-Pastora's wife's asylum application and assuming, in spite of evidence to the contrary, that Salinas-Pastora had made a choice about how to cope with the possibility of one or more of the parents' deportations.
 
 
 23
 The BIA assumed that Salinas-Pastora would take his family with him to Nicaragua if deported because "he implied [during his deportation hearing] that if he were deported, his son would accompany him to Nicaragua, which would result in educational problems for the son." However, this assumption is not adequately supported by the record. Salinas-Pastora explained the educational problems his son might have in Nicaragua only after being asked whether his family would accompany him if he were deported and answering, "I don't know what I would do. I believe so." We also note that Salinas-Pastora's original application for suspension of deportation stated: "It would be an extreme hardship to his U.S. citizen children were Respondent to be deported and, consequently, separated from them."
 
 
 24
 On appeal to the BIA, Salinas-Pastora argued that the separation that might occur as a result of his deportation would cause extreme hardship to himself and his children. The Board discounted this possibility, noting that Salinas-Pastora "did not support this implication with evidence demonstrating that reasonable provisions will be made for the children's care and support," if they remained in the United States and he were deported.[1]
 
 
 25
 As in Cerrillo-Perez, several alternatives--either the citizen children accompany Salinas-Pastora to Nicaragua, possibly leaving their mother here to pursue her asylum application, or they remain in the United States (with or without their mother)--were raised. The BIA was required to consider the resulting hardships in each circumstance. Therefore, the order regarding suspension of deportation must be vacated and remanded for proper consideration by the BIA.
 
 
 26
 B. Impact of Fear of Persecution on Hardship Analysis
 
 
 27
 In making its determination that Salinas-Pastora and his U.S. citizen children would not undergo extreme hardship following his deportation to Nicaragua, the Board failed to consider how Salinas-Pastora's previous experience of political persecution and his subjective fear of future persecution could impact his experience of hardship upon deportation.
 
 
 28
 An alien's prior experiences and current fear of persecution certainly will affect that alien's experience of hardship upon return to his home country. In asylum determinations, a person who establishes severe past persecution may still be granted asylum even where there is little or no evidence of the present possibility of persecution. 8 C.F.R. § 208.13(b)(1)(ii) (1996); Matter of Chen, 20 I. & N.Dec. 16 (BIA 1989). This policy indicates the Attorney General's understanding that past experiences of severe persecution, and even unfounded fears of future persecution, may have extreme emotional and psychological repercussions such that humanitarian concerns warrant granting asylum to aliens who do not face a likelihood of future persecution.
 
 
 29
 Although Salinas-Pastora did not suffer the sort of severe persecution that would warrant a determination of asylum eligibility in spite of changed country conditions, his past experiences with the Sandinistas will surely affect his sense of safety and security for himself and any family members who accompany him, should he be deported. This factor goes directly to the emotional and psychological hardship that an alien would endure upon deportation. See Mejia-Carrillo v. INS, 656 F.2d 520, 522 (9th Cir.1981) (the BIA must consider personal and emotional hardships which result from deportation).
 
 
 30
 The INS claims the BIA need not have included persecution in its hardship analysis. In Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir.1986), this court stated that "the BIA may conclude that claims of political persecution have no relation to a determination of 'extreme hardship' under section 244(a)(1)." However, unlike the facts in Kashefi-Zihagh, here there is no indication that the BIA affirmatively chose to disregard the effect Salinas-Pastora's experiences of past persecution in its analysis of hardship, rather than simply neglecting this factor.
 
 
 31
 Both prior to and since Kashefi-Zihagh, this circuit has treated persecution as a relevant issue in hardship determinations. See Gutierrez-Centeno v. INS, 99 F.3d 1529 (9th Cir.1996) (BIA abused its discretion by failing to show proper consideration for all relevant factors, including political instability in Nicaragua and the power the Sandinistas continued to wield in light of alien and family's history of conflict with the Sandinistas); Watkins v. INS, 63 F.3d 844 (9th Cir.1995) (BIA abused its discretion in disregarding family's fear of retributive violence if returned to the Philippines in hardship analysis); Zavala-Bonilla v. INS, 730 F.2d 562, 568 (9th Cir.1984) (suspension of deportation claim, based in large part on the persecution claim, must be reconsidered on remand because of improper persecution analysis).
 
 
 32
 Because the BIA did not address whether Salinas-Pastora's fear of persecution and past experiences were part of its hardship analysis, it is impossible to know whether it was exercising its discretion not to consider persecution, or simply failed to consider all of the circumstances surrounding Salinas-Pastora's suspension claim. "We shall not assume the BIA considered factors that it failed to mention in its decision." Casem v. INS, 8 F.3d 700, 702 (9th Cir.1993) Discretion can be properly exercised only if the specific circumstances of the applicant's case are actually considered. Cerrillo-Perez, 809 F.2d at 1422. Therefore, the BIA's failure to consider the impact of Salinas-Pastora's experiences with the Sandinistas and the current political situation in Nicaragua in its hardship analysis requires a remand.
 
 CONCLUSION
 
 33
 To the extent that the petition relates to the request for asylum and withholding of deportation, review is DENIED. To the extent that it relates to the request for suspension of deportation, review is GRANTED.
 
 
 34
 VACATED in part and REMANDED for further proceedings consistent with this opinion.
 
 
 35
 BEEZER, Circuit Judge, concurring in part, dissenting in part:
 
 
 36
 I concur with part I of the court's opinion as to the petitioner's request for asylum and withholding of deportation. I dissent as to part II which remands on the issue of suspension of deportation. I would deny Salinas-Pastora's petition for suspension of deportation; the BIA properly considered the hardship arising from family separation as well as Salinas-Pastora's alleged past political persecution and his subjective fear of political persecution.
 
 
 37
 The BIA did not fail to consider the issue of family separation in its extreme hardship analysis; rather Salinas-Pastora failed to meet his evidentiary burden. In order to make a claim of hardship based on family separation, namely between parent and child, the petitioner must provide evidence of his or her plan to provide for the children involved. See Perez v. INS, 96 F.3d 390, 393 (9th Cir.1996) (the BIA requires "at a minimum, an affidavit from the parents stating that it is their intention that the child remain in this country, accompanied by evidence demonstrating that reasonable provisions will be made for the child's care and support.") (quoting Matter of Ige, Int.Dec. 3230 (BIA 1994)). Petitioner fails to provide this information, and consequently the BIA correctly held that the petitioner did "not support this implication [of family separation] with evidence demonstrating that reasonable provisions will be made for the children's care and support" if they remain in the United States. The BIA concluded: because "no extreme hardship would ensue to [the children] if they accompanied the respondent to Nicaragua, the possibility that the children might face extreme hardship if left in the United States would be the result of the respondent's choice, not the respondent's deportation."
 
 
 38
 The record evidence is unclear as to what the petitioner's plans were for his children. When questioned as to whether his family would accompany him to Nicaragua, the petitioner responded "I don't know what I would do, I believe [I would bring them with me.]" At other times he implied that the children would remain in the United States with their mother who is also awaiting asylum and deportation hearings. In the absence of more definite evidence of the petitioner's plans, or the necessary affidavit, the BIA need not consider this factor because as we reasoned in Perez, a claim of family separation "can easily be made [simply] for the purposes of litigation." 96 F.3d 393 (quoting Matter of Ige, Int.Dec 3230). Salinas-Pastora's burden under Perez is not altered simply because his children's mother is also seeking asylum. This contingency could have been addressed in an affidavit as well.
 
 
 39
 Second, the BIA did not abuse its discretion by failing to discuss the hardship arising from Salinas-Pastora's alleged past political persecution or his fear of future political persecution. A country's political condition is clearly a relevant factor in the hardship determination under Matter of Anderson, 16 I & N Dec. 596 (BIA 1978). Political persecution and the fear of future political persecution clearly influence the emotional and psychological hardship that an alien would endure upon deportation and we require that the BIA consider all relevant factors in denying relief. Cerillo-Perez v. INS, 809 F.2d 1419, 1422 (9th Cir.1987). We do not, however, require that the BIA duplicate its work or engage in meaningless inquiry. The BIA extensively analyzed the petitioner's claims of past persecution as well as his fear of future persecution in its denial of his request for asylum. The BIA concluded that: (1) Salinas-Pastora did not suffer past political persecution and (2) improved conditions in Nicaragua rebutted the petitioner's fear of future persecution. Consequently, these factors did not merit further review on this issue of hardship.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Perez v. INS, this court recently approved a BIA evidentiary requirement to support a claim of extreme hardship based on the potential separation of an alien's family. Perez v. INS, No. 95-70307, slip op. 12135, 12142 (9th Cir. September 16, 1996). The BIA has required parents to submit affidavits stating their intent that their child remain in the United States upon the parent's deportation, accompanied by evidence demonstrating that reasonable provisions would be made for the child's care and support. See Matter of Ige, Int.Dec. (BIA) 3230. Nevertheless, legitimate evidentiary concerns must be balanced against the clear statement of this court in Cerrillo-Perez, that the BIA "cannot adopt a general presumption that separation of parents and children will not occur." Cerrillo-Perez, 809 F.2d at 1426
 In this case, Salinas-Pastora's wife's pending claim of asylum makes such an evidentiary requirement unreasonable. The Salinas-Pastoras were not in a position to present evidence demonstrating their ability to care for and support their children in the United States until they knew if either parent would be granted relief from deportation. Therefore, it was an abuse of discretion for the BIA to assume that the children would accompany Salinas-Pastora to Nicaragua upon his deportation.